**Kathleen M. GROVER, Plaintiff,**

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Defendant.**

**Civ. No. 84–0259 P.**

United States District Court,
D. Maine.

Nov. 21, 1985.

Richard J. Kelly, Richardson, Tyler &
Troubh, Jon Holder, Portland, Me., for
plaintiff.

John J. Flaherty, Christopher D. Nyhan,
Portland, Me., for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT

### GENE CARTER, District Judge.

This action is before the Court on Defendant's motion to set aside the default which was entered against it on September 19, 1984.[1] The record shows that on August 17, 1984, Plaintiff filed a complaint seeking recovery of benefits under a disability insurance policy. The complaint was served on the Commissioner of Insurance and was received at Defendant's head office in New York on September 7, 1984. It was mailed on that date to the Portland, Maine office of Underwriters Adjusting Company, where it arrived on September 14, 1984. Having determined that the claim was not of the type he dealt with, the Portland claims representative sent the complaint to Continental Life Insurance Company in Glens Falls, New York on September 17, 1984. It did not arrive at that office until September 24, 1984. An answer to the complaint was due on September 18. Someone in Glens Falls contacted counsel in Portland on the 24th, and he received a copy of the complaint in the mail on September 28, 1984. On October 1, counsel filed a motion to set aside the default.

In *Phillips v. Weiner,* 103 F.R.D. 177 (D.Me.1984), this Court examined the good cause standard for setting aside an entry of default under Fed.R.Civ.P. 55(c). In *Phillips,* the Court identified six factors to be considered in the exercise of its discretion: (1) the excuse for the delay; (2) the existence of a meritorious defense; (3) prejudice to the other party; (4) the amount of money involved; (5) the good faith of the parties; and (6) the timing of the motion to set aside the default.

Defendant's affidavit asserts that the complaint's long voyage was due to the mails, an error in the initial forwarding decision, and the failure of a computer follow-up system which should have tracked the matter. As the Magistrate had previously found, the excuse is weak. For the most part the delay reflects carelessness in clerical or technical practices, merely exacerbated by the slowness of the mails.

### Meritorious Defense

In examining the defense under *Phillips,* the Court is not to weigh the facts. Rather, the Court must determine whether the defense has merit for pleading purposes. In this case, Defendant asserts that Plaintiff made various material omissions and misstatements in her application for disability insurance. Defendant wished to amend the answer to allege that the misrepresentations were fraudulently made, "thereby meeting the standard of *American Home Assurance Co. v. Ingeneri,* 479 A.2d 897 (Me.1984)." Report of Scheduling Conference (November 5, 1984) (per Hornby, Mag.). That amendment was foreclosed by its untimely filing, however. *See* Order, January 30, 1985 (per Carter, J.). The question remains, then, whether the answer in its original form set forth a meritorious defense for pleading purposes.

Defendant argues that even without amendment the complaint sets forth a claim for fraudulent misrepresentation as required by *Ingeneri.* Alternatively, Defendant suggests that fraud or knowing misrepresentation is not a necessary element of a defense to an action on a policy of disability insurance.

The Court has examined the affirmative defense pleaded by Defendant

---

1. Defendant's motion was first heard by the United States Magistrate on November 2, 1984. The Magistrate decided on November 5, 1984 to set aside the default. His decision was based in part on the fact that Defendant was to amend his answer to allege a meritorious defense of fraudulent misrepresentation. Defendant did not amend by the date set by the Court. On review, where the latter fact was apparent, this Court vacated the decision of the Magistrate and remanded the case to him for redetermination in light of Plaintiff's failure to amend. Before the Magistrate could decide the issue, he noted a possible conflict of interest and disqualified himself. Therefore, this Court has held a hearing and will decide the motion to set aside default *de novo.*

and finds that it does not allege fraud. Under Fed.R.Civ.P. 9(b) "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, or other condition of mind may be averred generally." Although the allegations set forth in Defendant's affirmative defense describe various misrepresentations, including Plaintiff's failure to disclose her knowledge that she might have lupus, nowhere is there an allegation that the alleged misrepresentations were made with fraudulent intent. The Court of Appeals for the First Circuit has frequently stated that Rule 9(b) requires "specification of the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *Hayduk v. Lanna,* 755 F.2d 441, 443–444 (1st Cir.1985) (*quoting McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir. 1980)); *Wayne Investment, Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13–14 (1st Cir.1984). Although the specifics of the fraudulent intent need not be alleged, the pleadings must give adequate notice of the claim of fraud or mistake. *McGinty,* 633 F.2d at 229. In *McGinty,* the Court found that fraud had been adequately pled because the circumstances of the misrepresentations were specified *and* fraudulent intent was generally pled. Since the pleading here merely alleged misrepresentation and did not allege fraudulent intent, it did not provide adequate notice to Plaintiff that she would be required to defend against a claim of fraud.

Defendant asserts that the fraud necessary to invalidate a contract is different from the fraud necessary to make out a claim for fraudulent misrepresentation and that it has adequately pled the elements of fraud to vitiate a contract. It is plain, however, that although Defendant seeks to invalidate the insurance contract, the gravamen of its affirmative defense is fraudulent misrepresentation. Fraudulent intent is a necessary element of that claim, *see, e.g., Bartner v. Carter,* 405 A.2d 194 (Me. 1979), that must be pled at least generally.

The Court finds, therefore, that the pleadings do not adequately set forth a meritorious defense of fraudulent misrepresentation.

Defendant suggests in the alternative that misrepresentation without fraud can form a defense to Plaintiff's claim. In support of this contention, Defendant relies on 24–A M.R.S.A. § 2706, which purports to set forth a time limit on certain defenses to actions on health insurance contracts. Section 2706 provides in pertinent part:

Time limit on certain defenses: (a) After 3 years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy....

Defendant contends that it may be inferred from this statute that there are two categories of misstatements—fraudulent and nonfraudulent—which may form the basis of a defense to claims made under a health insurance or disability contract. If such an inference is not drawn, Defendant suggests that section 2706 will have no meaning. Section 2706 is found in chapter 33 of the Maine Insurance Code, which deals generally with health insurance contracts.

The Court is unpersuaded by Defendant's argument concerning section 2706. Section 2701 of chapter 33 defines the scope of that chapter as follows:

Nothing in this chapter shall apply to or affect:

.     .     .     .     .

2. Any group or blanket policy.

The policy issued to Plaintiff appears to be a group policy sponsored by the Maine State Bar Association. *See* 24–A M.R.S.A. § 2805–A. The policy application form was preprinted to show the Maine State Bar Association as the "name of organization" sought in response to Question 1. In the policy's renewal conditions, set forth in Exhibit B to the complaint, the insurance company reserves the right to decline to renew the policy "if the Insured ceases to be an

active member of the organization named in the application. However, if such Insured transfers to a similar organization, which also sponsors a like disability plan with the Company, he will be entitled to apply for and receive like insurance under that plan." Exhibit C to the complaint is a letter from the insurer to Plaintiff bearing the following legend:

Re: Policy No.—GXX 181165

Group—Maine State Bar Assoc.

Claim No.—290–1P 4899

■ The Court is persuaded by these indicia that Plaintiff subscribed to a group insurance policy not covered by chapter 33 of the insurance code.[2]

■ Plaintiff contends that any defense based on alleged misrepresentations in the instant application for insurance is governed by 24–A M.R.S.A. § 2411. The Court agrees. Section 2411 is found in chapter 27 of the insurance code which specifically applies "to *all* insurance contracts and annuity contracts, other than: 1. Reinsurance; 2. Policies or contracts not issued for delivery in this State nor delivered in this State; 3. Wet marine and transportation insurance." 24–A M.R.S.A. § 2401 (emphasis added). Nothing in chapter 35 indicates that section 2411 would not apply to group health insurance contracts. In fact, section 2818 of chapter 35 specifically provides that all group health insurance policies must include language paralleling that set forth in the first portion of section 2411 to the effect that all statements in the application for insurance shall be deemed to be representations and not warranties. It follows, therefore, that the second part of section 2411 is equally applicable to group health insurance contracts. That portion provides:

Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

1. Fraudulent; or

2. Material either to the acceptance of the risk or to the hazard assumed by the insurer; or.

3. The insurer in good faith would either not have issued the insurance or contract, or would not have issued it at the same premium rate, or would not have issued insurance in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

■ Although the statutory language uses the disjunctive "or," the Law Court has recently held that the purpose of section 2411—to protect insureds—is defeated unless the three subparts are read in the conjunctive. *American Home Assurance Co. v. Ingeneri*, 479 A.2d 897, 900 (Me. 1984). Therefore, for a misrepresentation to prevent recovery under an insurance policy, it must be fraudulent and material, and the insurer must have relied on it. *Id.* at 901. Defendant is incorrect in its assertion that nonfraudulent misrepresentations could form the basis of a defense to recovery under the policy in question. Since it has not alleged that the misrepresentation was fraudulent, it has not alleged a meritorious defense.

The Court reaches the same conclusions about the third and fourth factors to be considered in setting aside the default as the Magistrate did. There has been no real prejudice to Plaintiff as a result of Defendant's delay in answering. Also, there is a significant amount of money involved in the case. Plaintiff seeks not only the $400 per week that was provided for in the insurance contract, but also seeks substantial punitive damages.

■ In assessing the fifth factor, the good faith of the parties, the Court notes that the dereliction evidenced by Defendant's failure to file a timely answer is not an isolated incident. Shortly thereafter,

---

**2.** The Court's finding is bolstered by the fact that the Magistrate recused himself from this action because he was insured by Defendant's group disability insurance provided to members of the Maine State Bar Association.

when the Magistrate was prepared to set aside the default upon Defendant's timely filing of an amended affirmative defense, Defendant again missed the deadline set by the Court. The failure to file promptly, especially occurring as it did in the context of a default proceeding, evidences a cavalier disregard for the Court's procedures. The Court cannot find good faith in a party's lackadaisical attitude toward the rules of procedure, which are designed to facilitate and expedite trials on the merits. *See Wilcox v. Triple D Corp.*, 78 F.R.D. 5, 7 (E.D.Va.1978). It is clear that litigation can only proceed at a halting pace when it is frequently interrupted by peripheral motions and debate concerning missed deadlines.

The image of Defendant as less than diligent is reinforced when the Court considers the sixth factor, the timing of filing the motion to set aside default. Plainly, Defendant's motion to set aside the default was not filed exceedingly late. It could, however, have been filed sooner. On September 24, 1984, the proper person within Defendant company received the complaint. While he called counsel, he did not expedite the sending of the complaint to counsel in Portland despite the fact that the summons made clear that an answer was then overdue. Whether counsel knew or did not know of the relevant dates at the time of the phone call, he did not do anything about the response until the complaint arrived in Portland four days later. Thus, Defendant's casual attitude toward the Court's deadlines has been evident from the outset.

The Court acknowledges that generally it is better to try cases on the merits than to resolve them through procedural means, as, for example, by default. On balance here, however, after considering the pertinent factors described in *Phillips v. Weiner*, the Court cannot find that the default should be set aside. Although the case is monetarily significant and there has been little prejudice to Plaintiff by the default, Defendant has offered only the weakest of excuses for its default. More-

over, Defendant has not set forth a meritorious defense and has not shown itself to be the sort of good faith litigant whose failure to follow timely pleading practices, as mandated by the procedural rules of the Court, should be so readily excused.

Accordingly, it is ORDERED that Defendant's Motion to Set Aside Default be, and it is hereby, DENIED.