BAILEY ALDRICH, Senior Circuit Judge. .
 

 On April 17, 1989 Biddeford School Department (Biddeford
 
 [1]
 
 ) contracted with Instructional Systems, Inc. (ISI), a New Jersey corporation, to purchase a computer-assisted learning system and services from ISI for approximately $580,000 over a six year period. The agreement provided,
 

 Biddeford has the right to cancel this agreement after the first year of operation. If Biddeford opts to cancel, Instructional Systems will take over the equipment lease and remove the equipment.
 

 At that time, as ISI knew, there was not yet an equipment lease. On September 21,
 
 *768
 
 1989 Biddeford entered into a lease with Business Credit Leasing, Inc. (BCL) under which Biddeford agreed to pay BCL a total of $600,000 over the five year term
 
 [2]
 
 of the lease and to vest current and future ownership of the equipment supplied by ISI in BCL, with an option in Biddeford to turn over the equipment to BCL at the end of the lease, or to purchase from BCL at the then value. The lease was not assignable without BCL’s consent. The day previous, September 20, ISI had agreed with BCL (the “remarketing agreement”) that if Biddeford should default on the lease ISI would take possession of the equipment as BCL’s agent and use its best efforts to resell for BCL’s benefit. Out of these three seemingly straightforward agreements we have, in ISI’s view, a very complicated situation.
 
 [3]
 
 One of the difficulties is that the alleged complexities may never have been thought of by ISI until long after suit was brought.
 

 Biddeford commenced a so-called pilot program, but on March 20, 1990 it notified ISI that it was exercising its option to cancel the agreement in June, concededly timely, and requested ISI to “take over the said equipment lease.” ISI took back the equipment, under protest, but did not make the payments due on the lease. Instead, according to the affidavit of a Mr. Dunn, its New Jersey counsel, it attempted to negotiate a settlement with Biddeford and BCL, on what grounds does not appear. Rather than agreeing, BCL brought this action against Biddeford for the lease payments. Biddeford denied liability, and, by a third party complaint, sought declaratory relief to the effect that ISI, rather than it, was obligated for the payments, but that if this was not so, and Biddeford must pay, ISI was required to reimburse it.
 

 On January 7, 1991 Mr. Dunn accepted service of the third party summons received, together with the complaint, on December 24, and assigned responsibility for the litigation to a younger partner. This partner failed to retain local counsel, and neglected to file an answer or other pleading himself within the 20 days specified in the summons. Fed.R.Civ.P. 12(a). In due course ISI was defaulted. The balance of this opinion is devoted to unsuccessful attempts to remove the default. We affirm.
 

 Default was entered on January 29. On February 14 the partner, who had been on trial and forgot about the case, telephoned local counsel who had been approached, but not définitely retained, and learned the bad news. On February 15 counsel moved to set aside the default and answer late, with a memorandum to follow. This memorandum, filed by local counsel on February 22, asserted that Biddeford could cancel only if the ISI system did not improve the test results of the students, and that it canceled for other reasons. “Thus, ISI has a meritorious defense to the claim.” The late filing of the answer was asserted to be due to misplacing the papers and the busy trial schedule of the partner. This, and the basis of the defense that the right to cancel was conditional, was supported by an assertion, unexplained, in the partner’s affidavit. ’ Biddeford replied, pointing out that ISI was offering no valid defense. In March, local counsel responded again that the cancellation clause was ambiguous and added that ISI’s contract-signing representative’s affidavit showed that he understood the agreement could be canceled only for “non-appropriation of funding or lack of performance.” No attempt was made to deal with the unambiguous contract language recited in the complaint, or with the parole evidence rule.
 

 On April 30 the magistrate to whom the case had been assigned rendered an opinion denying the motions because of insufficient excuse and no showing of an adequate defense.
 
 [4]
 
 On May 10 ISI filed an objection
 
 *769
 
 to the failure to find the excuse acceptable. Nothing was said about a defense. On May 17 it moved to supplement the record, adding affidavits by Mr. Dunn and his partner attesting to the fact that, unrecognized by both, the partner, though working, had been suffering personal difficulties due to concern over serious family health problems, and had not been himself.
 
 [5]
 
 On May 24 Biddeford responded, contesting the sufficiency of the partner’s condition as an excuse under all the circumstances, and noting the magistrate’s discussion and conclusion of no adequate defense.
 

 Filings did not end there. On June 5, without leave, ISI submitted a 15 page so-called reply memorandum. It protested that its objection to the magistrate’s report included the matter of viable defenses because it had annexed a copy of the partner’s February affidavit that claimed the cancellation clause was ambiguous. This was an erroneous argument; the objection’s reference to the affidavit was in quite another particular. The memorandum proceeded to set out wholly new defenses based on the interrelationship of the three agreements, the lack of an assignment of the equipment lease and other alleged difficulties. It asked that the magistrate’s decision be reversed, so that ISI could proceed to trial, or, alternatively, that the case be returned to him for further consideration.
 

 The district court rendered its decision on July 31, 1991, 770 F.Supp. 31. Procedurally .it held that it need not decide whether ISI’s June 5 reply memorandum was too late, because ISI had already made a serious failure. It had not presented a proper defense to the magistrate, nor had it objected to the magistrate’s rejection. The court quoted our language that there is no review as of right of a new contention.
 
 Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,
 
 840 F.2d 985, 990 (1st Cir.1988), citing Fed.R.Civ.P. 72(b).
 
 See also,
 
 28 U.S.C. § 636(b)(1) (1992 Supp.). Although it felt the new information of the partner’s family worries was sufficient to excuse the late filing of an answer, it refused to find that this one lawyer’s problems were sufficient, under the overall circumstances, to excuse the late submission of a new defense.
 

 The three contracts have all been in existence'since 1989 and.if ISI thought that their relationship provided a potential meritorious defense, that argument should have been raised before the Magistrate Judge.
 

 At the court hearing Mr. Dunn stated that, as far as his firm knew, ISI had no knowledge of the content of the equipment lease until suit was commenced. In its reply brief ISI magnifies this to conclusive evidence of ISPs ignorance. We find this hard to accept.
 
 [6]
 
 With client knowledge, the court’s finding of lack of diligence, on which it based its conclusion of waiver, is even more supportable.
 

 We are not led to be disturbed by the court’s decision. The amount of money involved, much emphasized by ISI, rather than invoking liberality, points to a duty of due care. If Biddeford’s lease could make for trouble, it strikes us as odd that ISI, who was in the business, led Biddeford, an unsophisticated customer, to believe it would be wholly free to cancel and then not
 
 *770
 
 supervise it as to future pitfalls, if there were such. Instead, ISI now complains of the terms of the lease, and the “conflicting interplay” caused by the remarketing agreement that allegedly barred it from becoming an assignee, an agreement that it made itself. True, there were three agreements, but if the troika was unmanageable, this is late in the day.
 

 Affirmed.
 

 [1]
 

 . The City of Biddeford, formerly a party to this litigation, was dismissed, with no appeal taken.
 

 [2]
 

 . The difference between six years,
 
 ante',
 
 and five is not presently material.
 

 [3]
 

 . "This matter involves the complex and sometime conflicting interplay of three agreements. among three separate parties."
 

 [4]
 

 . The latter is now, quite properly, conceded; the cancellation clause was peradventure unambiguous. This is the end of the road under Maine law,
 
 Loe v. Town of Thomaston,
 
 600 A.2d 1090, 1092 (Me.1991), and universally.
 
 Fairfield 274-278 Clarendon Trust v. Dwek,
 
 970 F.2d 990, 993 (1992); Restatement, Contracts, § 237. To
 
 *769
 
 cap this, ISI did not even offer parole evidence, but only the affidavit of its representative,
 
 ante,
 
 as to his understanding, for which no basis was given.
 

 [5]
 

 . ISI did not include this motion in the appendix. It was only by independent examination thereof that we learned that the seeming suggestion in ISI’s reply brief here, signed by local counsel, that it also dealt with defense — “the full and complete facts of why the Answer was not timely filed and with the full and complete legal, exposition of why the default should be lifted." — is quite erroneous. The magistrate had listed six issues; the motion dealt only with one — the excuse for not timely filing. Whether or not the omission of this document violated F.R.A.P. 30(a)(4), it violated more than a procedural rule to misstate its contents.
 

 [6]
 

 .' Could it be thought that ISI conducted its pre-suit negotiations with Biddeford and BCL without having a copy of the lease? When, on September 20, 1989, it entered into the remark-eting agreement with BCL, "In consideration of BCL entering into the below said lease ...” did it not see it? Biddeford had already signed a duplicate original on September 7, so it was in existence.