**LUCERNE FARMS, Plaintiff,**

v.

**BALING TECHNOLOGIES, INC., Defendant.**

No. 02–CV–49–B–S.

United States District Court, D. Maine.

July 1, 2002.

Peter J. Brann, Kevin J. Beal, Daniel Nuzzi, Brann & Isaacson, Lewiston, ME, for plaintiff.

Frederick J. Badger, Jr., Richardson, Whitman, Large & Badger, Bangor, ME, for defendant.

## AMENDED ORDER

SINGAL, District Judge.

A producer of animal feed seeks contract and tort damages from the seller of a reconditioned baling machine that the buyer claims was defective. Presently before the Court are Plaintiff's Motion for Default Judgment (Docket # 2) and Defendant's Motion to Set Aside Default and for Leave to File a Late Answer (Docket # 3). For the following reasons, the Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion.

## I.  BACKGROUND

Plaintiff Lucerne Farms claims that a reconditioned baling machine it bought from Defendant Baling Technologies, Inc. ("BTI") in early 2001 was defective when delivered

and neither Lucerne Farms nor BTI has ever been able to make it function properly. According to Lucerne Farms, it sent BTI a demand letter in January 2002, seeking reimbursement for the losses caused by the inoperable baler.[1] BTI's counsel, Peter Skivington, responded to Lucerne Farms' attorney, Kevin Beal, that before BTI could address the demand letter, Skivington would have to investigate BTI's insurance coverage for such a claim.

Lucerne Farms claims that it agreed to forestall legal action until February 20, 2002, to allow BTI to contact its insurer. However, having heard nothing further from Skivington by March 15, 2002, Lucerne Farms filed a nine-count diversity action against BTI, alleging breach of contract, breach of warranty and related tort claims. Lucerne Farms served the Complaint on BTI on March 26, 2002.

BTI's answer was due on or before April 15, 2002. See Fed.R.Civ.P. 12(a)(1). By letter dated April 2, 2002, Skivington informed Beal that BTI was open to discussing settlement but that he was still waiting for information from BTI's insurer. He also indicated that BTI wished to send representatives from its headquarters in North Chili, New York, to inspect the baling machine at Lucerne Farms' location in Fort Fairfield, Maine. He asked Lucerne Farms to agree to extend the time in which BTI was required to answer in order to allow the company an opportunity to contact its insurer and inspect the machine.

Shortly after receiving Skivington's April 2 letter, Beal left Skivington a voice mail message indicating that Lucerne Farms would agree to a one-week enlargement of the answer deadline.[2] On April 9, Skivington sent Beal a fax saying that one week would not be enough time because he would be out of the country the week of April 15 through 19. In a follow-up telephone conversation on April 10, Beal agreed to an extension until May 1, 2002, but reminded Skivington that he was

---

1.  BTI submitted no evidence about negotiations preceding the filing of the Complaint. The Court draws its description of this portion of the events from documents submitted by Lucerne Farms.

2.  Plaintiff claims Beal left the voice mail message on April 5; Defendant claims it was on April 8 or 9.

required to file the appropriate motion with the Court to secure an enlargement.

Instead of moving for an enlargement, Skivington followed what he claims is the accepted practice in New York, the jurisdiction in which he ordinarily practices. In correspondence dated April 11, 2002, Skivington sent Beal a proposed "stipulation," agreeing that BTI would have until May 1, 2002, to answer the Complaint. Skivington requested that Beal sign the stipulation in the space provided and return it to him to be filed with the Court. The cover letter also informed Beal that Skivington would be out of the office until April 22.

Unfamiliar with this method for requesting an enlargement of time, Beal faxed Skivington a letter on April 16 advising him that a stipulation was not the proper procedure for obtaining an enlargement in the District of Maine and that he was required to file a motion with the Court. Beal expected that Skivington would contact him when he returned to the office on April 22, 2002. When he did not, Lucerne Farms moved for entry of default and for default judgment. Pursuant to Rule 55(a), the clerk entered default on April 24. Fed.R.Civ.P. 55(a). The motion for default judgment is currently pending. On April 30, 2002, Defendant moved to set aside the default and for leave to file a late answer. *See* Fed.R.Civ.P. 55(c).

## II. DISCUSSION

■ The clerk has authority to enter default against a party who "has failed to plead or otherwise defend" in accordance with the Federal Rules of Civil Procedure. Fed. R.Civ.P. 55(a). However, the Court may later set aside the entry of default "for good cause shown." Fed.R.Civ.P. 55(c). The First Circuit has identified seven factors that are relevant to whether good cause exists to set the default aside: (1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, (3) whether the defaulting party presents a meritorious defense, (4) the explanation for the default, (5) the good faith of the parties, (6) the amount of money involved, and (7) the timing of the motion. *Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir.1989). There is no rigid formula for applying these factors. *See Leshore v. County of Worcester,* 945 F.2d 471, 472 (1st Cir. 1991). However, it is a basic tenet of federal civil procedure that "actions should ordinarily be resolved on their merits." *Coon,* 867 F.2d at 76. Especially when the motion to set aside default arises early in the case, the Court must "resolve doubts in favor of a party seeking relief from the entry of default." *Id.*

### A. Justification for the Default

■ Three of the *Coon* considerations relate to whether Defendant has offered an adequate justification for its default. The Court will consider these three considerations—the explanation for the default, whether the default was willful, and whether the defaulting party acted in good faith—as a group.

#### 1. Explanation for the Default

■ Two factors apparently motivated Defendant's failure to answer the Complaint by April 15, 2002: Skivington's belief that Plaintiff would allow Defendant extra time to answer, and Skivington's failure to familiarize himself with the procedures of this District. Although the Court does not fault Skivington for trusting his informal agreement with Beal that Defendant would have until May 1 to answer, Skivington certainly should have known that an agreement between counsel would not exempt Defendant from applicable court procedure. Skivington, who practices law primarily in New York, assumed that the accepted procedure in his district by which parties "stipulate" to an extension of the Court's time limits would also suffice in the District of Maine. He followed this procedure despite Beal's repeated admonition that he was required to move for an enlargement of time. *See* Fed.R.Civ.P. 6(b). In doing so, he demonstrated an unacceptable nonchalance toward the procedures of a court in which he is a guest. *See* D.Me.Loc.R. 83.1(c). The Court does not condone an attorney's "lackadaisical attitude toward the rules of procedure." *See Grover v. Commercial Ins. Co.,* 108 F.R.D. 366, 371 (D.Me. 1985). However, the Court may excuse an attorney's carelessness toward the rules

where there is no evidence that the default was willful. *See, e.g., Curtin v. Proskauer, Rose Goetz & Mendelsohn Group Long Term Disability Plan,* No. 01–269–P–C, 2002 WL 273300, at *3 (D.Me. Feb. 27, 2002); *Snyder v. Talbot,* 836 F.Supp. 26, 29 (D.Me.1993).

### 2. Willfulness

Courts tend to view a default as "willful" where it shows contempt for the court's procedures or an effort to evade the court's authority. *See, e.g., Coon,* 867 F.2d at 76 (declining to find default willful where there was no evidence that defendant purposely tried to conceal his whereabouts or evade service); *Snyder,* 836 F.Supp. at 29 (noting that although defendants delayed proceedings, they remained in contact with the court, which "militate[d] against categorizing their conduct as 'willful' "). There is no suggestion that Defendant's behavior was willful in that sense. In fact, Defendant concedes that Skivington acted improperly in not timely moving for an enlargement and has now retained local counsel. Defendant's prompt acknowledgement of its error and the steps it has taken to prevent future misunderstanding of local procedure both suggest that the default was careless rather than purposeful.

### 3. Good Faith

Likewise, although each party tries to impugn the other's motives, there is little evidence that either party acted in bad faith. Defendant claims Beal acted maliciously by filing for default on April 22—the day Skivington returned from vacation—after having agreed to give Defendant until May 1 to answer. Plaintiff claims that Skivington pretended to be active in seeking a resolution while stalling and delaying the litigation at every turn. Specifically, it alleges that Skivington asked for time to contact the insurer in several conversations between counsel but continually failed to do so. Plaintiff further points out that in mailing the "stipulation" to Beal on Thursday, April 11, and asking him to mail it back, Skivington could not possibly have believed in good faith that Defendant would be able to file the stipulation with the Court before the answer deadline of Monday, April 15. While this may be the case, in the Court's view the facts suggest carelessness and miscommunication between counsel rather than bad faith on either side.

In sum, although it is improper for an attorney to substitute his own procedures for those dictated by the Federal and Local Rules, the Court is sympathetic to Defendant's point that Skivington believed he was operating within an agreement between counsel and there is no evidence of bad faith or willful conduct. Therefore, it finds Defendant's justification adequate and will set aside the default provided that other factors also weigh in Defendant's favor.

### B. Merits of Proffered Defense

Even where there is good cause for a party's default, the Court will not set an entry of default aside unless it appears that the defaulting party might prevail if the case were allowed to proceed—that is, unless the defaulting party has advanced a potentially meritorious defense. *Bus. Credit Leasing, Inc. v. City of Biddeford,* 770 F.Supp. 31, 35 (D.Me.1991), *aff'd* 978 F.2d 767 (1st Cir. 1992). "[A] party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." *Coon,* 867 F.2d at 77.

Defendant advances two primary defenses at this stage, both of which are cognizable. First, Defendant asserts that the Court lacks personal jurisdiction. According to Defendant's affidavits, it is a New York corporation with no offices, sales representatives or employees in Maine. The Complaint alleges that Plaintiff contacted Defendant about purchasing a baler after seeing Defendant's advertisement on the internet. Plaintiff traveled to New York to inspect and purchase the baler, and it was Plaintiff that arranged for the machine to be delivered to Maine.

Plaintiff points out that Defendant also agreed to send and, in fact, did send technicians to Maine to assist with start-up and installation of the baler. However, especially at this early stage in the litigation, evidence of this isolated contact does not conclusively establish the Court's jurisdiction, and Defendant may be able to prove that it lacks sufficient contacts with the District of Maine to be subject to suit in its courts. *See, e.g.,*

*Douglas Dynamics, LLC v. Tuck's Trucks, Inc.*, No. 00–373–P–H, 2001 WL 225017 (D.Me. Mar. 7, 2001) (adopted by Hornby, J., Apr. 18, 2001); *Telford Aviation, Inc. v. Raycom Nat'l, Inc.*, 122 F.Supp.2d 44 (D.Me. 2000); *Snell v. Bob Fisher Enters.*, 115 F.Supp.2d 17 (D.Me.2000).

Alternatively, Defendant claims that the baler it sold Plaintiff was adequate for the use that Plaintiff described when the parties were negotiating the sale (i.e., baling dry hay), but that Plaintiff subjected the machine to an unintended use (i.e., baling shredded, wet hay). In response, Plaintiff insists that the machine it contracted to buy from Defendant, if functioning properly, should have been able to bale wet *or* dry hay and has submitted the report of a mechanical engineer to support that contention. In assessing the adequacy of the defense at this stage, however, "the Court is not to weigh the facts." *Grover*, 108 F.R.D. at 368. Rather, the Court merely recognizes that if Defendant is able to establish that Plaintiff's misuse of the baler, rather than a defect, caused the malfunction, it will have raised a defense on which it could conceivably prevail. *See generally Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197 (Me.1990) (identifying as one element of implied warrant of merchantability claim that product be fit for *ordinary purposes*); *Kobeckis v. Budzko*, 225 A.2d 418, 420–21 (Me.1967) (identifying as one element of implied warranty of fitness for a particular purpose that buyer "used the goods purchased *for the particular purpose which he made known to the seller*") (emphasis added). Therefore, Plaintiff's alleged misuse of the baler also constitutes a potentially meritorious defense.

## C. Prejudice to Plaintiff

Plaintiff concedes that the only disadvantage it has suffered as a result of the default is a delay in the proceedings. A delay alone does not constitute prejudice, absent some further disadvantage such as the death of a witness or unavailability of evidence. *Coon*, 867 F.2d at 77. This factor does not operate to Defendant's detriment.

## D. Timing of Motion to Set Aside Default

Plaintiff moved for default by motion dated April 22, 2002, and served Defendant with its motion that day. The Court entered the default April 24, 2002. Defendant moved to have the default vacated five business days later, on May 1. The haste with which Defendant moved to lift the entry of default both suggested that the default was not willful, *see Snyder*, 836 F.Supp. at 29, and helped to minimize any further delay in the case that might disadvantage Plaintiff. This factor thus works in Defendant's favor.

## E. Amount of Money Involved

Finally, Defendant speculates that, if successful, Plaintiff's claim could range in the "hundreds of thousands of dollars." (*See* Def.'s Mot. to Set Aside Default at 6 (Docket # 3).) Plaintiff estimates that it is entitled to damages of at least $140,000. (See Pl.'s Objection at 14 (Docket # 6).) This is a significant amount of money, which counsels in favor of resolving the dispute on the merits. This factor also weighs in Defendant's favor.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion (Docket # 3) and sets aside the default entered against Defendant on April 24, 2002. Furthermore, Defendant's Answer, which was submitted as an appendix to its Motion is to be docketed as of this date.

Having set aside the entry of default, the Court also DENIES Plaintiff's Motion for Default Judgment (Docket # 2).

SO ORDERED.