[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12078
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cv-00053-HLM

PHILLIP WAYNE KOGER,

Plaintiff - Appellee,

versus

GREGGORY CARSON,
Individually,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 30, 2021)

Before MARTIN, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

This case arises out of the arrest of Phillip Wayne Koger following a high-speed car chase. Koger sued Sergeant Greggory Carson, among others, alleging that the officers violated his Fourth Amendment rights by using excessive force when they arrested him. Carson moved for summary judgment on the basis of qualified immunity, and the district court denied his motion. Carson now appeals. After a careful review of the record, we affirm.

## I.    FACTUAL BACKGROUND

A. Pursuit and Crash

In March 2017, Koger was driving a white Camaro in Hamilton County, Tennessee. Deputy Brandon Bennett with the Hamilton County Sheriff's Department observed that Koger's license plate was partially obscured, which was a tag violation. Bennett initiated his blue lights and both parties pulled into a gas station. As soon as Bennett's vehicle came to rest at the gas station, Koger accelerated and fled. Bennett began pursuing Koger, following him across the state line into Georgia. After a few minutes, other officers and agencies joined the pursuit. Koger estimates that he was travelling at approximately 90 miles per hour.

Koger continued to lead multiple agencies on a high-speed chase through north Georgia. After unsuccessfully attempting to stop Koger using spike strips, Bennett hit Koger's car with the front end of his patrol car. This caused Koger's

2

car to veer into the median of the highway before crossing into oncoming lanes and crashing into the guardrail.  Another officer struck Koger's passenger side door.

B.  Koger's Removal from the Car

Once Koger's car stopped, officers approached the driver's side of his car. Although Koger initially had his hands outside the driver's side window, as officers approached he pulled his arms back into the car and shifted his torso toward the center of the car.  Bennett testified that he could clearly see the backstrap of a pistol in the console.

Multiple officers pulled Koger out of his car and onto the ground.  Several officers testified that Koger immediately began to resist and that they had to use force to get Koger to comply with their commands and stop resisting.  For instance, Fort Oglethorpe Police Deputy Gebelien testified that Koger engaged in a physical altercation with officers outside Koger's car.  Several officers assisted in handcuffing Koger and they eventually had to double-handcuff him due to his level of resistance.  Koger testified that he has no memory of any events that occurred between being handcuffed and waking up in the hospital hours later.

C.  Carson's Interaction with Koger

Koger was already in handcuffs when Carson, whose summary judgment motion is on appeal here, arrived at the scene.  When Carson arrived, Koger was lying prone on the ground near the guard rail and near the left front wheel of

3

Koger's car. Carson and Bennett lifted Koger, who was still handcuffed, off the ground. They then used a "high escort" position to walk him to the rear of a patrol car. A high escort position is when an arrestee is bent forward at the waist, and it is a common technique used by law enforcement officers. Carson and Bennett were the only officers who had their hands on Koger while escorting him to the rear of the patrol car.

Carson and Bennett testified that Koger began resisting as they were walking him to the rear of the patrol car. Carson testified that Koger attempted to jerk out of his grip and "stiff walk," making it difficult for the officers to control him. And Bennett testified that as soon as the officers began to walk Koger to the rear of the patrol car, Koger began to stand up straight, resisting the high escort position. Bennett further testified that Koger's sudden movement almost took him on his tip toes and Carson had to help Bennett bend Koger back over to continue walking him to the rear of the patrol car.

According to Carson, Bennett attempted to place Koger over the trunk of the patrol car to keep him from jerking away or pushing back. Other officers testified they heard yelling and commands being given, which suggested there was a struggle at the back of the patrol car. Carson and Bennett also testified that when Carson attempted to pat down Koger, Koger raised his body off the patrol car and

4

pushed himself back. Bennett said that he had to lay over Koger's body to attempt to keep him on the trunk.

It is at this point the question about the force used comes into dispute. Carson testified that, while Bennett was trying to hold Koger down over the car, Carson punched Koger in the back twice "for pain compliance." When the punches "didn't seem to have an effect," Carson delivered two elbow strikes. Although Koger's knees buckled after the first elbow strike, Carson testified that he struck Koger a second time "just from momentum of being in a fight."

Carson then began to pat down Koger's ankles for weapons. According to Carson and Bennett, Koger immediately began to push himself away from the trunk and attempted to stand. Carson then struck Koger in the groin, lifting him off the ground and slamming him onto the trunk.[1] After the pat down, Koger slid off the other side of the trunk. Carson testified that he could hear Koger screaming that he could not breathe, but he "knew [Koger] could breathe because he's saying I can't breathe." According to Carson, "when someone that's [sic] screaming I can't breathe, they're breathing quite well." Carson did not fear for his life at any point during the arrest.

---

[1] Because we are reviewing a denial of summary judgment, we describe these facts in the light most favorable to the non-moving party (here, Koger). See Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007). However, we note that Carson's account differs from Koger's. Rather than characterizing this force as a "strike" to Koger's groin that was used to "slam" him onto the trunk, Carson says he put his hand between Koger's legs to lift him onto the trunk. He says this is a common wrestling move.

Koger maintains that, at least once his knees buckled as a result of the first elbow strike, he was not resisting. In other words, according to Koger, he was handcuffed and not resisting when Carson delivered the second elbow strike and the uppercut strike to his groin. While Koger has no memory of this portion of his arrest, he points to testimony from Deputy Todd Cook who said he did not observe Koger resisting. Although there are dashcam videos that recorded the incident, we agree with the district court that none clearly depicts whether Koger was resisting.

D. Koger's Injuries

Following the incident, Koger was transferred to a hospital for treatment. His medical records indicate that he had decreased color flow to his left testicle and that he was in danger of testicular infarct. He was diagnosed with a scrotal contusion but did not need emergency surgical intervention.

## II.    PROCEDURAL HISTORY

As relevant here, Koger filed suit against Carson under 42 U.S.C. § 1983 alleging violation of his Fourth Amendment right to be free from excessive force. Carson moved for summary judgment on the basis of qualified immunity. The district court denied Carson's motion. The court found that it could not determine whether Koger was resisting and under Koger's version of the facts, Carson's use of force was excessive. The court went on to rule that it is clearly established that the use of force against a restrained and unresisting suspect is unconstitutional.

6

This is Carson's appeal.

## III.    STANDARD OF REVIEW

We review <u>de novo</u> the district court's denial of summary judgment based on qualified immunity.  <u>Williams v. Aguirre</u>, 965 F.3d 1147, 1156 (11th Cir. 2020).  Summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In making this determination, we view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant."  <u>Williams</u>, 965 F.3d at 1156 (quotation marks omitted).

## IV.    DISCUSSION

Carson argues that the district court erred in denying him qualified immunity at the summary judgment stage.  "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quotation marks omitted).  "To receive qualified immunity, the officer must first show that he acted within his discretionary authority."  <u>Lewis v. City of West Palm Beach</u>, 561 F.3d 1288, 1291 (11th Cir. 2009).  It is undisputed here that Carson was acting within his discretionary authority, so the burden shifts

to Koger to "show that qualified immunity should not apply." Id. To do so, Koger must show both (1) that Carson violated a constitutional right; and (2) that the relevant right was "clearly established" at the time of the alleged misconduct. Jacoby v. Baldwin County, 835 F.3d 1338, 1344 (11th Cir. 2016). We first address whether Carson committed a constitutional violation before turning to whether the relevant right was clearly established.

A. Constitutional Violation

The Fourth Amendment protects against unreasonable seizures. U.S. Const. Amend. IV. "The use of excessive force in executing an arrest is a species of unreasonable seizure, so the Fourth Amendment prohibits it." Hinson v. Bias, 927 F.3d 1103, 1117 (11th Cir. 2019). In determining whether Carson is entitled to summary judgment on Koger's claim that he used excessive force, the Fourth Amendment's "objective reasonableness" standard governs our inquiry. Id. (quotation mark omitted). Under that standard, "we must consider whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Id. (quotation marks omitted). And we must conduct our analysis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quotation marks omitted).

When evaluating a Fourth Amendment excessive force claim, we "carefully balance the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake." Id. (quotation marks omitted). We consider the following factors: "(1) the severity of the crime; (2) whether the individual poses an immediate threat to the safety of the officers or others; (3) whether the individual actively resists or tries to evade arrest by flight; (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." Id. (citations and quotation marks omitted).

Taking the facts in the light most favorable to Koger, a jury could find Carson's use of force violated the Fourth Amendment. According to Koger's version of the facts, he was resisting immediately following the stop but by the time Carson arrived he was lying face down, prone, and double-handcuffed. Carson and Bennett then lifted Koger (bringing him from handcuffed and prone to handcuffed and standing), marched him to the back of the patrol vehicle, and leaned him over the vehicle in order to conduct a search. At this point, Carson punched Koger twice and delivered an elbow strike to his lower back, which caused Koger's knees to buckle. Due to fight momentum, Carson struck Koger in the back with his elbow a second time. Carson then placed his arm between Koger's legs and thrusted upwards in an uppercut motion, striking Koger's testicles and lifting him off the ground and onto the trunk of the patrol vehicle. During this time, Koger was screaming that he could not breathe. Upon the

9

conclusion of the search, Koger slid off the trunk onto the ground.  Koger

maintains that he was compliant and non-resisting during his interactions with

Carson at the rear of the patrol vehicle.

If Koger was indeed compliant and non-resisting, as we must accept here,

Carson's use of force was objectively unreasonable.[2]  That is because "[w]e have

consistently held that gratuitous use of force when a criminal suspect is not

resisting arrest constitutes excessive force."  Stryker v. City of Homewood, 978

F.3d 769, 775 (11th Cir. 2020) (quotation marks omitted) (reversing grant of

qualified immunity where officers beat, kicked, and choked suspect who was under

control and not resisting); see also Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th

Cir. 2008) (affirming denial of qualified immunity where officer punched

handcuffed, non-resisting suspect in the stomach); Lee, 284 F.3d at 1198 (finding

use of force was excessive where officer slammed plaintiff's head onto the hood of

her car when she was handcuffed and not posing any threat).

---

[2] We reject Carson's view that the force he used here was de minimis.  De minimis injury does not necessarily mean the force used was de minimis.  See Lee, 284 F.3d at 1200 ("that [the plaintiff] did not suffer greater injury to her head as a result of it being slammed against the trunk of a car does not alone render the force used de minimis").  But in any event, Koger was diagnosed with a scrotal contusion as a result of Carson's force and he testified that his testicle has "swollen up to the size of [a] softball" about 20 times since the incident.  Koger describes an injury that is more serious than the injuries suffered by plaintiffs in cases where we have found de minimis force.  See, e.g., Nolin v. Isbell, 207 F.3d 1253, 1255, 1258 & n.4 (11th Cir. 2000) (concluding force was de minimis where plaintiff suffered bruising that disappeared quickly and sought no medical treatment); Gold v. City of Miami, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (per curiam) (same where plaintiff "suffered only skin abrasions for which he did not seek medical treatment").

So the critical question is whether Koger was resisting. At least as to whether Koger was resisting when Carson delivered the second elbow strike and the uppercut strike to Koger's groin, there is a genuine dispute of fact. To begin, the dashcam videos do not resolve this question. In our view the videos do not clearly depict whether Koger was resisting. And witness testimony regarding the videos is not consistent. For instance, Deputy Floyd testified that the videos show Koger resisting the search by "jerking around" while Patrick Looper (Koger's expert) testified that, based on his review of the video, Koger "doesn't appear to be resisting."

Neither does eyewitness testimony answer the question. Four officers— Carson, Bennett, Smith, and Floyd—testified that Koger was resisting at the rear of the patrol vehicle.[3] On the other hand, another officer, Cook, testified that in his opinion Koger was not resisting. Carson says Cook's testimony cannot create a genuine dispute of fact, but his arguments in this regard fall short. Cook's testimony is not the kind of "scintilla of evidence" we have found insufficient to preclude summary judgment. In <u>Allen v. Board of Public Education for Bibb County</u>, 495 F.3d 1306 (11th Cir. 2007), for instance, we concluded that self-

---

[3] Carson's testimony is not completely consistent. He said: "The first elbow strike buckled Koger's knee, which indicated maybe he was done fighting. The second one was just from momentum of being in a fight." This suggests that, at least when Carson delivered the second elbow strike, Koger was not resisting.

11

serving declarations unsupported by other testimony were insufficient alone to defeat summary judgment.  Id. at 1322–23.  Here, in contrast, Cook's statement is consistent with Looper's assessment of the video footage.  And it is not self-serving; indeed, quite the opposite.  At the time of his deposition, Cook was still a defendant in this lawsuit and Carson was his superior.

Although Cook was, to some extent, impeached on cross-examination, this does not mean that Carson is entitled to judgment in his favor.  During cross-examination, Cook was shown prior interrogatory responses drafted with the help of an attorney in which he stated Koger was resisting.  Cook then modified his answer to say that he "observed [Koger] offering a little resistance."  Although this may raise a question about Cook's credibility, we do not make credibility determinations at the summary judgment stage.  Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1162 (11th Cir. 2012) ("Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper.").  Therefore, a genuine dispute of fact remains as to whether Carson used excessive force against Koger.

B.  Clearly Established Law

As recounted just above, under Koger's version of the facts, he was handcuffed and not resisting at least when Carson delivered the second elbow strike and used an uppercut strike to his groin to lift him onto the trunk of the

patrol vehicle.  Assuming this to be true, such conduct amounts to a clearly established constitutional violation.  At the time of this incident in 2017, there was no doubt that, in this Circuit, striking a non-resisting suspect constitutes excessive force.  See Hadley, 526 F.3d at 1330 (force was excessive where officer punched handcuffed, non-resisting suspect in the stomach); Lee, 284 F.3d at 1198 (use of force was excessive where officer slammed plaintiff's head onto the hood of her car when she was handcuffed and not posing any threat).

## V.    CONCLUSION

For these reasons, Carson is not entitled to qualified immunity.  The district court's denial of Carson's motion for summary judgment is therefore **AFFIRMED**.