NOT FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13512

Non-Argument Calendar

_____

JOSHUA SMOLA,

Plaintiff-Appellant-Cross Appellee,

versus

SHERIFF, HILLSBOROUGH COUNTY FLORIDA,

Defendant-Appellee-Cross Appellant,

JACK THOMPSON,

Hillsborough County Sheriff's Deputy,
in his individual capacity,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-02383-SDM-UAM

_____

Before BRANCH, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

This is an excessive-force case.  Joshua Smola appeals from the district court's grant of summary judgment to a sheriff's deputy on Smola's Fourth Amendment claim.  The deputy's supervisor cross-appeals, arguing that the district court abused its discretion by declining to exercise supplemental jurisdiction over Smola's state-law battery claim.  Seeing no error in either decision, we affirm.

## I.

Joshua Smola was on edge.[1]  That was understandable given that he was a felon carrying a firearm and driving a stolen car alongside a passenger wanted for a separate crime.  After aborting an attempt to sell drugs out of fear that he "picked up a tail," Smola kept driving.  His intuition was correct—several Hillsborough County Sheriff's deputies in unmarked cars were in pursuit.

A home surveillance video depicts what happened next.[2] Arriving at a residence, Smola backed in after another person

---

[1] Because this case comes to us on a grant of summary judgment to Thompson, we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of Smola. *See Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020).  That said, there is home surveillance video of the events in question, so we evaluate those "facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).  But any ambiguities in the video are construed in Smola's favor. *See Baker v. City of Madison,* 67 F. 4th 1268, 1277 (11th Cir. 2023).

[2] The video has no audio.

opened a chain-link fence for the vehicle to enter. Smola and the passenger exited the vehicle. The passenger proceeded to the residence, while Smola stood by the vehicle, watching the road. Shortly after the passenger came back outside, several sheriff's deputies in unmarked cars parked in front of the house and entered the yard wearing vests emblazoned SHERIFF to arrest Smola's passenger. One of them was Sheriff's Deputy Jack Thompson, who yelled "put your hands up" as he approached Smola. Seeing the deputies' approach, Smola walked toward the rear of the car and reached for his waistband. He then ducked down—to "get rid of the gun" without the deputies' seeing—and tossed the firearm under the car.[3] Still in his pockets? A knife, over twenty grams of methamphetamine, a gram of heroin, and two Alprazolam pills.

The parties dispute whether the deputies saw Smola toss the gun under the car. Smola says no because the car obstructed their view, and that he "put his hands up immediately" upon hearing Thompson's command. Thompson disagrees. He says that because Smola made a "furtive movement out of his waist," he knew Smola was armed and feared a "shootout," as Smola "wasn't listening to [his] commands at all." Construing the facts in Smola's favor, the video does not show whether the deputies observed Smola toss the gun under the car. Instead, it reveals only that Smola removed the gun from his waistband and bent down to toss it to the ground beneath the vehicle.

---

[3] Because Smola is a felon, his possession of a firearm is a second-degree felony. *See* Fla. Stat. § 790.23(1)(a), (3).

Either way, after Smola disposed of the gun, Thompson told him to "get on the ground" as he approached.  Smola testified that he heard this command, and yet he backed away in the video, raising his arms, as Thompson and another deputy—guns drawn—drew near.  Smola slowly lowered himself to his knees.  Thompson then quickly made his way to Smola's side and kicked him in the lower back, reducing Smola to a prone position.[4]  The other deputy handcuffed Smola.  Upon searching him, the deputies discovered the knife and drugs in his pocket, as well as the discarded gun under the car.  In all, under twenty seconds had passed between the deputies' arrival and their handcuffing of Smola.  And less than ten seconds had passed between Thompson's venture through the gate and his kick to Smola's back.

Smola testified that he felt no immediate pain because of the kick, and photographs taken of his back reveal no visible injury.  An x-ray later showed that he suffered a broken rib and laceration on his spleen.  His prescribed treatment was "rest" and "pain management," and Smola incurred no medical bills.  Though he reported lingering numbness in two fingers, no medical provider attributed that to the arrest.  As for Deputy Thompson, Smola

---

[4] Calling the ordeal "very tense, like scary tense," Thompson testified that he kicked Smola "because he was not getting on the ground like [Thompson] instructed."  So too did Thompson testify that he wanted to get Smola "face down on the ground" so that he could not "go with his hands into that waistband and pull that gun out, or the knife."

24-13512                    Opinion of the Court                    5

testified that he understood Thompson was "just trying to do his job, and he [Thompson] got a little excited."

Even so, Smola sued Thompson and the Hillsborough County Sheriff, Chad Chronister, in a two-count complaint.[5] *First*, Smola sued Thompson in his individual capacity for using excessive force in violation of the Fourth Amendment. *Second*, Smola brought a state-law battery claim against Sheriff Chronister in his official capacity. *See* Fla. Stat. § 768.28(9)(a).

The district court granted Thompson's motion for summary judgment on Smola's Fourth Amendment claim. Analyzing the party's submissions as well as the video evidence, the court found that Thompson's use of force was "'objectively reasonable' under the circumstances." And even if it wasn't, the district court determined that the law was not clearly established "that a deputy's using a single kick in circumstances in which the arresting deputy perceives a danger constitutes a 'constitutionally excessive' use of force."

The court turned next to Smola's state-law battery claim against Chronister. Noting the parties agreed that the standard for what is "clearly excessive" under Florida law matched the "excessive force" standard used in the Fourth Amendment context, the district court nonetheless explained that "no binding decision"

---

[5] This case isn't Smola's first bite at the apple: he sued Thompson and the Hillsborough County Sheriff's Office in 2019 over the same incident. *See Smola v. Thompson*, Case No. 8:19-cv-1789-VMC-TGW (M.D. Fla. 2019). The district court dismissed the case for lack of prosecution.

had held the standards to be equivalent. Refusing to layer the federal constitutional standard onto a "claim for battery under state tort law," the court said that a "Florida court, not a federal court" was better positioned "to resolve a question of Florida tort law." It thus declined to exercise supplemental jurisdiction, denied Chronister's motion for summary judgment, and dismissed the state-law claim without prejudice.

Smola now appeals the summary-judgment grant to Thompson on his Fourth Amendment claim. Chronister, for his part, cross-appeals on the denial of his summary judgment motion.

## II.

We review a district court's grant of summary judgment de novo, viewing the evidence and drawing all inferences in the light most favorable to the nonmoving party. *Ireland v. Prummell*, 53 F.4th 1274, 1286 (11th Cir. 2022). Summary judgment is appropriate if "there is no genuine dispute as to any material fact" such that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We review a decision to decline supplemental jurisdiction over a state-law claim for abuse of discretion. *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022).

## III.

There are two issues on appeal. *First*, we consider whether Thompson is entitled to qualified immunity on Smola's Fourth Amendment claim. *Second*, we address whether the district court

abused its discretion in declining to exercise supplemental jurisdiction over the state-law battery claim.

## A.

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). This is a demanding standard that protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (quotation omitted).

The Fourth Amendment guarantee of freedom from "unreasonable" "seizures" embraces "the right to be free from excessive force." U.S. Const. amend. IV; *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). In excessive-force cases like this one, "the first qualified immunity inquiry—i.e., whether a plaintiff's constitutional rights were violated—is governed by the Fourth Amendment's objective reasonableness standard." *Baker v. City of Madison*, 67 F.4th 1268, 1279 (11th Cir. 2023). Under that standard, we analyze "reasonableness from the perspective of a reasonable officer on the scene at the time the events unfolded" and consider the totality of the circumstances. *Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1298 (11th Cir. 2021) (quotation omitted); *Barnes v. Felix*, 605 U.S. 73, 79 (2025). This "fact-intensive inquiry" balances the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Jones v. Ceinski*, 136 F.4th 1057, 1062 (11th Cir.

2025) (quotation omitted).  At all times, however, we must take care not to employ "the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Smola contends that the district court erred in finding that no reasonable jury could conclude that Thompson used excessive force here.  Instead, Smola says, the record shows that he was "passive, non-threatening, and compliant" with Thompson's instructions when Thompson chose to "escalate[]."  Because Smola "immediately complied" with the deputy's command to "get down," Smola calls the "forceful kick" to his back objectively unreasonable under the Fourth Amendment.

We disagree.  Thompson confronted a "tense, uncertain, and rapidly evolving" situation that unfolded in less than twenty seconds.  *Id.* at 396–97.  After retreating behind the vehicle and bending down—crucially, outside the deputies' line of sight—Smola continued to back away before slowly kneeling to the ground rather than lying prone.  It was reasonable for Thompson to conclude that Smola's slow compliance with his commands, as well as his retreat from the officers, posed a potential threat.  That is all the more true given that less than ten seconds had passed between Smola throwing the gun under the car and Thompson's kick to his back.  Finally, though we do not minimize Smola's broken rib and lacerated spleen, he suffered no long-term health effects and was prescribed no more than "rest" for his injuries.  *Cf. Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1292 (11th Cir. 2009).  In short, weighing the nature and quality of the intrusion against

24-13512          Opinion of the Court          9

the government's interests, we cannot conclude that Thompson's kick was "objectively unreasonable" under the circumstances. *Graham*, 490 U.S. at 397. Nor is it for us to second-guess his decision-making in the heat of the moment from the "peace of a judge's chambers." *Id.* at 396–97 (quotation omitted).

Our precedents support this result. In many of Smola's cited cases, we found uses of force to be constitutionally excessive because an officer had "gratuitous[ly]" injured "a suspect who is under control, not resisting, and obeying commands."[6] *Richmond v. Badia*, 47 F.4th 1172, 1184 (11th Cir. 2022) (quotation omitted). And even where we acknowledged that a single strike could constitute excessive force, the suspect was handcuffed, "immediately complied" with officers' requests, and "neither resisted arrest nor posed a danger to" law enforcement. *Hadley v. Gutierrez*, 526 F.3d 1324, 1327, 1329–30 (11th Cir. 2008); *see also Smith v. Mattox*, 127 F.3d 1416, 1418, 1420 (11th Cir. 1997) (no qualified immunity where officer broke suspect's arm after he had "docilely submitted to arrest" and "was offering no resistance at all" (emphasis deleted)).

Here, that is not the case. Smola was neither cuffed nor "immediately compli[ant]" with Thompson's commands. *Hadley*,

---

[6] *See, e.g.*, *Jones*, 136 F.4th at 1059–60; *Stryker*, 978 F.3d at 771; *Cantu v. City of Dothan*, 974 F.3d 1217, 1234–35 (11th Cir. 2020); *Patel v. City of Madison*, 959 F.3d 1330, 1335, 1343–44 (11th Cir. 2020); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1326 (11th Cir. 2017); *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014).

526 F.3d at 1327. Even accepting that the deputies did not see Smola toss the gun under the car, Smola moved behind the car and bent over to avoid their view. Evaluated from the perspective of a reasonable officer there to execute an arrest warrant for Smola's passenger, Thompson's kick was not constitutionally unreasonable.[7]

## B.

Federal courts defer to their state-court counterparts on questions of state law. *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). In limited circumstances, however, we may exercise supplemental jurisdiction over state claims that "arise out of a common nucleus of operative fact with a substantial federal claim." *Silas*, 55 F.4th at 865 (quotation omitted); *see also* 28 U.S.C. § 1367(a). That said, this Court has long "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

Under Florida law, the "exclusive remedy" for an injury caused by a state officer is suing "the governmental entity, or the head of such entity in her or his official capacity," unless the act "was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). In other words, the

---

[7] Because Thompson did not use excessive force, we do not reach the clearly established prong of the qualified-immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

state is *not* liable in tort for those acts of an officer committed "outside the course and scope of" his employment, in "bad faith," "in a manner exhibiting wanton and willful disregard of human rights, safety, or property," or with a "malicious purpose." *Id.* And the Florida tort of battery "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Paul v. Holbrook*, 696 So. 2d 1311, 1312 (Fla. Dist. Ct. App. 1997).

After granting Deputy Thompson's motion for summary judgment, the district court turned to Smola's battery claim against Sheriff Chronister. Smola sued Chronister—not the tortfeasor, Thompson—because Thompson used excessive force "while acting within the course and scope of his employment." While the district court explained that the parties agreed as to the excessive-force standard under Florida law and the Fourth Amendment— something on which they still do—it declined to exercise supplemental jurisdiction over the state-law claim.

We see no abuse of discretion in that decision. Though Smola's battery claim arose "out of a common nucleus of operative fact" with his Fourth Amendment claim, the district court had "broad discretion" to either exercise supplemental jurisdiction over the state-law claim or to dismiss it. *Silas*, 55 F.4th at 865–66 (quotation omitted). Noting that—at the time—"no binding decision" had held that the legal standards for a Florida battery claim and Fourth Amendment claim were the same, the court chose the latter course. Considering that "concerns of federalism—

namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed," that choice was not an abuse of discretion.[8]  *Id.* at 866.

\* \* \*

The judgment of the district court is **AFFIRMED**.

---

[8] Chronister maintains that our subsequent decision in *Baxter v. Santiago-Miranda* compels a different result.  121 F.4th 873 (11th Cir. 2024).  We disagree.  In that case, we explained that this Court "has applied the same Fourth Amendment excessive force analysis to a battery claim against an officer under Florida law."  *Id.* at 891–92 (citing *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006)).  *First*, *Baxter* was decided after the district court denied Chronister's motion for summary judgment.  And *second*, *Davis* held that a "triable issue of fact as to whether excessive force was used" existed for a Florida battery claim "[b]ased on the facts and reasoning set forth" in other parts of the opinion.  451 F.3d at 768.  Though that case involved a Fourth Amendment claim, the quoted language did not expressly hold that the standards are per se identical for summary-judgment purposes.  The district court thus did not abuse its considerable discretion here.