[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12605

_____

D.C. Docket No. 03-23170-CV-AJ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 6, 2008
THOMAS K. KAHN
CLERK

MICHAEL E. HADLEY,

Plaintiff-Appellee,

versus

G. GUTIERREZ, Miami Beach Police Officer, Badge #710,
J. ORTIVERO, Miami Beach Police Officer, Badge #707,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 6, 2008)**

Before WILSON, COX and BOWMAN,[*] Circuit Judges.

COX, Circuit Judge:

---

[*]Honorable Pasco M. Bowman II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

This excessive force case is before us on interlocutory appeal from the district court's order denying Defendants Ortivero's and Gutierrez's motion for summary judgment seeking qualified immunity. We affirm in part and reverse in part.

## I. Background

Michael Hadley filed *pro se* a civil rights complaint under 42 U.S.C. § 1983 against Miami Beach police officers German Gutierrez and Jose Ortivero ("Defendants").[1] Hadley filed his complaint after pleading guilty in Florida state court to one count of resisting arrest with violence in violation of Fla. Stat. § 843.01.

The parties agree that while high on cocaine, Hadley entered a Publix supermarket yelling, "Help me, help me, Jehovah God please help me!" and Defendants, upon arriving at the store, found Hadley running around and knocking items off of the shelves. (R.1-1 at 4.) Their agreement on the facts ends here.

According to his complaint,[2] the Defendants "drew their guns and ordered Mr. Hadley to freeze. Mr. Hadley immediately complied and Defendants Gutierrez and Ortivero then proceeded to restrain Mr. Hadley by placing him in handcuffs behind his back . . . without incident." (R.1-1 at 5.) While handcuffed and being led from the

---

[1] Hadley also sued the Defendants' supervisor, Sgt. Smith. The district court dismissed Smith from the lawsuit, a ruling Hadley does not challenge.

[2] Hadley moved for leave to file an amended complaint. (R.1-31.) The district court granted the motion to permit Hadley to add a "John Doe" defendant. It then directed that Hadley's case would otherwise proceed according to the original complaint. (R.2-72 at 3.)

store, he again began asking for Jehovah's protection. "Defendants Gutierrez and Ortivero started punching Mr. Hadley in his stomach and face until he was beaten into a state of unconsciousness. While they were doing this the Defendants were yelling 'Shut up nigger' in response to Mr. Hadley[']s plea for help from Jehovah God." (R.1-1 at 5.) Hadley testified to essentially the same story in his deposition, but the only excessive force he complained about was a single punch to the stomach by Officer Ortivero.[3]

Hadley recounts a slightly different version of the facts in his Response to Defendants' Motion for Summary Judgment ("sworn response"). (R.2-92.) The most important difference is his contention that he did resist arrest while inside the Publix. *See* R.2-92 at 4 ("[I]t is clearly established that Plaintiff's arrest, plea, and conviction for the offense of resisting arrest with violence was grounded on the initial contact between Plaintiff Hadley, and Defendants Gutierrez, and Ortivero, . . . which took place within the Publix supermarket . . . ."); *id.* at 5 ("[b]ased on the first act of resisting arrest with violence within the Publix supermarket by Plaintiff").

---

[3]  "I remember the officers coming into the store. It was two of them. And they had their weapon drawn out like, you know, in the stance of 'freeze.' That is what they said, 'freeze,' and I froze. . . . [N]ow we are on our way to the police cruiser in the parking lot of Publix. I remember looking up at the sky and I said, 'Jehovah God, help me,' [at which time] Ortivero said, 'Shut up, nigger,' and punched me in my stomach." (R.2-99 at 13: 21-24; 18: 3-16.)

3

Not surprisingly, Defendants offer a different version of the events that transpired that night. According to their account, Hadley did not cooperate when they ordered him to freeze in the Publix. Instead, he began "to swing his arms in a violent manner and began screaming 'Jehovah take me, Jehovah take me.' After [a] struggle w[ith] Def[endant] he was finally taken into custody." (R.2-84, Ex. 1 at 2.) Once outside of the store and en route to the police car, they contend, Hadley "became irate and began to start kicking at both officer[s] . . . at which point he was redirected to the ground," causing a visible laceration to his face. (*Id.*) Officer Gutierrez's report of the incident does not mention any blows to Hadley's stomach or face, nor does Sgt. Smith's supervisor report.

After pleading guilty in Florida state court to one count of resisting arrest with violence, Hadley filed this § 1983 civil rights complaint. In pertinent part, Hadley alleges that Defendants used excessive force and that they conspired to cover up their use of excessive force. The district court adopted in part the magistrate judge's report and recommendation, and denied qualified immunity to the Defendants.[4] Defendants filed this interlocutory appeal, and we appointed counsel for Hadley.

---

[4] The court agreed with the magistrate judge that Hadley's complaint, although claiming an Eighth Amendment violation, should be construed as asserting a Fourth Amendment violation. (R.3-127 at 2.) But, unlike the magistrate judge, the court refused to treat Hadley's conspiracy claim, which he asserted under § 1983, as a conspiracy under 42 U.S.C. § 1985. (*Id.* at 3.)

## II. Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review denial of summary judgment de novo, viewing the facts in the light most favorable to the nonmovant. *Dyer v. Lee*, 488 F.3d 876, 878 (11th Cir. 2007). "In exercising our interlocutory review jurisdiction in qualified immunity cases, we are not required to make our own determination of the facts for summary judgment purposes; we have discretion to accept the district court's findings, if they are adequate." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

## III. Jurisdiction and Issue On Appeal

We have interlocutory jurisdiction to review the denial of summary judgment in qualified immunity cases where our review requires a determination of the clearly established law that existed at the time of the allegedly unlawful acts. *See Cottrell*, 85 F.3d at 1484 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816 (1985)). We also have jurisdiction if the district court simply rules that "material issues of fact" precluded summary judgment. *See id.* at 1484-85 (citing *Behrens v. Pelletier*, 516 U.S. 299, 312-13, 116 S. Ct. 834, 842 (1996)). Finally, in the course of deciding an interlocutory appeal, we have authority to decide those evidentiary

5

sufficiency issues that are part and parcel of the core qualified immunity issues. *Id.* at 1486.

In light of our limited jurisdiction, the issue on appeal is whether the district court erred in denying Defendants' motion for summary judgment seeking qualified immunity. In order to decide that issue, however, we must consider Defendants' other arguments to the extent they are intertwined with the qualified immunity analysis.

## IV. Discussion

Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). There is no dispute that Defendants were engaged in a discretionary duty while arresting Hadley. So the burden shifted to Hadley on summary judgment to show that Defendants are not entitled to qualified immunity. *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002).

Qualified immunity involves a two-step inquiry. The first question is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that Defendants'] conduct violated a constitutional [or statutory] right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If so, the

second question is whether the right, be it constitutional or statutory, was clearly established. *Id.*

## A. Constitutional Violations

In his complaint, Hadley alleges two possible constitutional violations. He first alleges that "Defendants Gutierrez and Ortivero, in using excessive force against Mr. Hadley[,] violated the Eighth and Fourteenth Amendments" to the Constitution. (R.1-1 at 9.) He also alleges that the Defendants' "conspiracy to cover up this incident violates the Eighth and Fourteenth Amendments [to] the United States Constitution, and 42 U.S.C. § 1983." (*Id.* at 9-10.) We address each allegation in turn.

### 1. Excessive Force

In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S. Ct. 596, 598 (2004) (citing *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985), and *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989)). A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006). Our cases identify several factors instructive in determining whether an officer's use of force was objectively reasonable, including

"(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

The district court refused to consider Hadley's sworn response to the Defendants' motion for summary judgment because it contradicted his prior deposition testimony. In his deposition, Hadley testified that "Ortivero punched me in the stomach and said, 'Shut up, nigger,' and, . . . that is all I remember." (R.2-99 at 19:20-21.) In his sworn response, however, Hadley claimed that "Gutierrez and Ortivero . . . made racial slurs (shut up nigger), and then commenced to beat Plaintiff about the head and stomach and in fact beat Plaintiff into a state of unconsciousness, causing severe permanent injury . . . ." (R.2-92 at 8.) Under our precedent, the district court was free to disregard Hadley's sworn response as contradictory to his prior deposition testimony. *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party

cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").[5]

So, viewing the facts adduced in Hadley's deposition in the light most favorable to Hadley, the court found that "Officer Ortivero struck him [Hadley] in the stomach even though he was not struggling or resisting, and Officer Gutierrez did nothing to stop him." (R.3-127 at 3.) It was on this basis that the court denied qualified immunity to both officers.

We exercise our discretion to accept the district court's findings of fact and conclude that, under those facts, Officer Ortivero's punch constituted excessive force against Hadley. The court found that Officer Ortivero punched Hadley in the stomach while he was handcuffed and not struggling or resisting. Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force. In *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), we held that a police officer used excessive force by slamming the plaintiff's head onto the hood of her car when she was handcuffed, not posing a threat to the officer, and not posing a flight risk. *Id.* at 1198; *see also Slicker*, 215 F.3d at 1233 (force was excessive

---

[5]     Through his counsel's Supplemental Brief, Hadley argues that the district court should have considered his sworn response in finding the facts for purposes of summary judgment. (Pl.'s Supp. Br. at 10-11 n.6.) We reject the argument that *Van T. Junkins* does not control this issue, and we find no error in the district court's refusal to consider Hadley's sworn response.

where officers kicked handcuffed and non-resisting defendant in the ribs and beat his head on the ground).

Hadley neither resisted arrest nor posed a danger to Officer Ortivero sufficient to warrant a blow to the stomach. Thus Officer Ortivero was not entitled to use any force at that time. While Officer Ortivero might have subjectively believed Hadley posed a risk of danger—Hadley was admittedly high on cocaine and paranoid—we do not consider the subjective belief of Officer Ortivero in determining whether force is excessive. Rather, excessive force is judged solely on an objective basis. *See Graham v. Connor*, 490 U.S. 386, 399, 109 S. Ct. 1865, 1873 (1989); *Nolin v. Isbell*, 207 F.3d 1253, 1257 n.3 (11th Cir. 2000) (referring to subjective element of the excessive force test as "invalidated"). Therefore, Officer Ortivero's single punch constituted excessive force.

Officer Gutierrez's inaction, however, is a different story. "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir.2002)) (quotation marks omitted). But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so. *Priester v. City of Rivera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir.

10

2000). The district court found that Officer Gutierrez "did nothing to stop [Ortivero]" from punching Hadley. (R.3-127 at 3.) The court did not find that Gutierrez could have prevented Ortivero from doing so. In fact, Hadley presented no evidence from which a reasonable jury could find that Gutierrez could have anticipated and then stopped Ortivero from punching Hadley once in the stomach. Therefore, the district court erred in denying qualified immunity to Officer Gutierrez because he committed no constitutional violation.

Before leaving the topic of excessive force, we pause to address an argument advanced by the Defendants before the district court and before us—that, in light of his guilty plea to resisting arrest with violence, Hadley's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), and collateral estoppel.

In *Heck*, the Supreme Court articulated the principle that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487, 114 S. Ct. at 2372. The thrust of the Defendants' argument is that Hadley's guilty plea "constitutes an admission to the lawfulness of the Officers' actions during [the]

11

arrest[,]" (Defs.' Initial Br. at 17), so that success on the § 1983 claim would necessarily invalidate Hadley's guilty plea.

The parties spend considerable time debating at what point during the encounter Hadley resisted. Because of his guilty plea, we assume he resisted at some point during the night. What we do not definitively know, however, is whether the punch complained about occurred at a time when Hadley was resisting. The resisting arrest count to which Hadley pleaded guilty is general in nature, and offers no insight into the sequence of events surrounding Hadley's arrest, including at what point Hadley resisted.[6] It is theoretically possible that Hadley was punched then resisted, or even that he resisted first, but was punched after he stopped resisting. So the question becomes, viewing the evidence in the light most favorable to Hadley, whether a jury could conclude that at some point Officer Ortivero punched Hadley in the stomach when he was not resisting? If so, there is a constitutional violation not barred by *Heck*. The jury is free to disbelieve Hadley's deposition testimony that he

---

[6]    The information charging Hadley with resisting arrest with violence reads in full: MICHAEL EDWIN HADLEY, on or about February 03, 2002, in the County and State aforesaid, did unlawfully, knowingly, willfully and feloniously resist, obstruct or oppose OFFICER G. GUTIERREZ and/or OFFICER J. ORTIVERO, duly qualified Law Enforcement Officers, in the lawful execution of a legal duty being performed by said officers[], to wit: the detention and/or arrest of said defendant, by the said defendant(s) offering or doing violence to the person of said officers[], in violation of s. 843.01, Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.
(R.2-84, Ex. 5 at 2.)

12

never resisted outside of the Publix, yet also believe that he was nonetheless punched at a time when he was not resisting. Under that version of facts, as Defendants admit (Defs.' Initial Br. at 15), there is no *Heck* bar.

For similar reasons, the excessive force claim is not barred by collateral estoppel. Because Defendants rely on a state criminal judgment to bar a federal action, we look to the state's law governing collateral estoppel. Florida permits the use of defensive collateral estoppel in the criminal-to-civil context. *See Vazquez v. Metro. Dade County*, 968 F.2d 1101, 1106 (11th Cir. 1992); *Zeidwig v. Ward*, 548 So. 2d 209, 209 (Fla. 1989). But, collateral estoppel does not apply where one of the issues forming the basis of the civil lawsuit was not necessarily resolved in the prior criminal proceeding. *Vazquez*, 968 F.2d at 1108. Hadley's guilty plea to a non-specific charge of resisting arrest with violence did not necessarily resolve the issue of whether Officer Ortivero punched Hadley while he was resisting. Therefore, because the issue of excessive force was not resolved in the prior criminal proceeding, Hadley is not collaterally estopped from litigating that issue now.

## 2. Conspiracy

"[T]o sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of [his] constitutional rights." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998) (citing *Slavin v. Curry*, 574

F.2d 1256, 1262 (5th Cir. 1978), *modified on other grounds on denial of reh'g*, 583

F.2d 779 (5th Cir.1978)[7]). In addition, the plaintiff must prove that the defendants

reached an understanding to deny the plaintiff's rights. *See Bendiburg v. Dempsey*,

909 F.2d 463, 469 (11th Cir. 1990).

Hadley alleges that the Defendants conspired to cover up their use of excessive

force by falsifying police reports in violation of his rights under the Eighth and

Fourteenth Amendments. In their motion for summary judgment, the Defendants

argue that Hadley cannot demonstrate a constitutional violation or an agreement

between them to cover up the use of excessive force.

Hadley fails to explain what constitutional right the alleged cover-up infringed.

We can imagine some possibilities. Covering up the use of excessive force may

hinder a criminal defendant's access to the courts to redress a constitutional violation,

a right protected by several constitutional provisions. *See Chappell v. Rich*, 340 F.3d

1279, 1282-83 (11th Cir. 2003) (right secured by Article IV's Privileges and

Immunities Clause, First Amendment, Fifth Amendment, and Fourteenth

Amendment). Or, the cover-up may prevent exculpatory or impeaching evidence from

reaching the desk of the state prosecutor, a denial of the defendant's due process

---

[7]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent decisions of the former Fifth Circuit handed down prior to October 1, 1981.

rights under the Fourteenth Amendment. *See McMillian v. Johnson*, 88 F.3d 1554, 1567-68 (11th Cir. 1996). Hadley does not contend that the alleged cover-up prevented him from seeking redress for a constitutional violation, or that the cover-up denied the state prosecutor access to exculpatory or impeaching evidence.

Hadley has the burden to show an actual denial of his constitutional rights underlying the cover-up conspiracy. It is not our job to divine a constitutional violation to support Hadley's conspiracy claim. We are left completely in the dark about the constitutional basis for the claim. His complaint contains no explanation of which rights protected by the Fourteenth Amendment were infringed. And, tellingly, neither Hadley's *pro se* brief (Pl.'s Initial Br. at 11-12) nor his appointed counsel's brief (Pl.'s Supp. Br. at 20-21) cites a single conspiracy case. Hadley has wholly failed to establish a constitutional basis for asserting a conspiracy claim sufficient to withstand summary judgment.

More importantly, for purposes of summary judgment, Hadley offered no evidence from which we can discern an agreement between the Defendants to cover up the use of excessive force. The district court found that Hadley's testimony that Officer Gutierrez told Officer Ortivero that he had "'nailed him [Hadley] good' . . . taken together with all the other evidence . . . is enough to show an agreement by Officers Ortivero and Gutierrez to cover up the excessive force allegedly used by

15

Officer Ortivero." (R.3-127 at 3.) Because the district court's findings of fact on this issue are inadequate, we must look to the record to determine whether genuine issues of material fact precluded summary judgment. *See Cottrell*, 85 F.3d at 1486.

Hadley testified that he heard Sgt. Smith tell the Defendants that they should have their reports of the incident—with the "same time, date and everything"—on his desk the following morning. (R.2-99 at 61.) Hadley testified that Smith made this statement in response to one of the Defendants asking whether he could punch Hadley again. (*Id.* at 60-62.) Hadley also testified that he heard Officer Gutierrez tell Officer Ortivero that he "nailed him good." Hadley maintains that these statements show that the Defendants conspired to cover up Ortivero's use of excessive force.

That Smith wanted the Defendants' reports on his desk the following morning is not surprising; his job responsibilities include compiling a supervisor's report of crimes.[8] (R.2-84, Ex. 1, Attach. 1, 2.) More to the point, there is neither direct nor circumstantial evidence in the record that supports the finding of an agreement between Officer Ortivero and Officer Gutierrez to cover up the incident.

In summary, we hold that a fact-finder could conclude that Officer Ortivero violated Hadley's Fourth Amendment right to be free from excessive force. We hold

---

[8] Apparently, Officer Ortivero did not file an incident report; the parties point to none in their briefs, and none is attached to their motion for summary judgment.

that neither Officer Ortivero nor Officer Gutierrez otherwise violated any of Hadley's constitutional rights. We turn now to the second inquiry in the qualified immunity analysis, whether the right to be free from excessive force was clearly established.

## B. Clearly Established Law

In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2156. "For a right to be 'clearly established,' previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *GJR Invs., Inc.*, 132 F.3d at 1366.

We hold that a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002. In *Lee*, 284 F.3d 1188, we concluded that slamming a non-resisting criminal suspect's head onto hood of a car constituted excessive force. Along those same lines, we proclaimed in *Skrtich*, 280 F.3d at 1303, that "[b]y 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued . . . ." Applying "the excessive force standard would inevitably lead every reasonable officer . . . to conclude that the force" used here—punching a non-resisting criminal suspect for no apparent reason other than malice—is not protected

17

by our constitution. *Priester*, 208 F.3d at 926-27 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1998), *amended by* 14 F.3d 583 (11th Cir. 1994)) (quotation marks omitted). Therefore, Officer Ortivero is not entitled to qualified immunity on Hadley's excessive force claim.

## V. Conclusion

The district court did not err in denying Officer Ortivero qualified immunity on the excessive force claim. The district court did err in refusing to grant Officer Gutierrez qualified immunity on Hadley's excessive force claim and in refusing to grant qualified immunity to both Defendants on Hadley's conspiracy claim. We reverse the denial of Gutierrez's motion for summary judgment. We affirm the denial of Ortivero's motion for summary judgment on the excessive force claim, and reverse the denial of Ortivero's motion for summary judgment on the conspiracy claim.

AFFIRMED IN PART; REVERSED IN PART.