[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2010
JOHN LEY
CLERK

No. 09-15103
Non-Argument Calendar
_____

D. C. Docket No. 08-00518-CV-ORL-28-DAB

ROBERT A MILLS,

Plaintiff-Counter-
Defendant-Appellee,

versus

SHERIFF J.R. JACK PARKER,

Defendant-Counter-
Claimant,

AGENT RANDY HOLIDAY, et al.,

Defendants,

DEPUTY JONATHAN KENT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 13, 2010)

Before EDMONDSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Deputy Jonathan Kent appeals the district court's order denying his motion for summary judgment based on qualified immunity in a *pro se* civil rights action filed by Robert Mills, pursuant to 42 U.S.C. § 1983, alleging the application of excessive force during an arrest. On appeal, Deputy Kent argues that the district court erred in denying him qualified immunity because he did not violate any clearly established right, and the court incorrectly analyzed whether Mills had a clearly established right to be free from the force used by Kent under the circumstances. We affirm.

On interlocutory appeal, we review *de novo* the district court's denial of summary judgment as to qualified immunity. *Bozeman v. Orum*, 422 F.3d 1265, 1267 (11th Cir. 2005). "In doing so, we do not make credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Id.*

Accordingly, in the light most favorable to Mills, the record shows the following facts: A police officer named Agent Holliday had called Mills on multiple occasions and asked him to come to the sheriff's office and provide him with the names of individuals suspected of stealing handguns, but Mills told him

2

that he did not know of anyone. On the morning of his arrest, when Deputy Kent and Agent McCarty entered his bedroom Mills was asleep. They each, separately and loudly, ordered Mills to show his hands, but he did not respond. Mills alleged that he was unaware and unresponsive because he had taken two Xanax pills during the night. Agent McCarty, who had reholstered his gun when he saw Mills asleep, grabbed Mills by the right arm and Deputy Kent punched him in the face before he had a chance to say or do anything, causing severe facial trauma. Mills alleged that Deputy Kent punched him in retaliation for refusing to talk to the police and said that after he was handcuffed and arrested, Agent Holliday told him, "This is what happens to you when you don't come to see me when I tell you to."

In one of the arresting officer's police reports attached to the complaint, Agent Douglas McCarty stated that the officers went to Mills's home to serve an arrest warrant in relation to Mills's recent purchase of a stolen firearm. The report noted that Mills had been convicted of drug and property related offenses, and:

> While [Mills did] not have a violent past, he has resisted several attempts by Agent Holliday to make contact with him over the past several days. Due to his unwillingness to cooperate in the investigation, and the fact probable cause existed for the charge of possession of a firearm by a felon, a warrant for his arrest was secured.

Mills claims that he did not resist the officers in any way and the first thing that he remembered was being pulled off the bed and bleeding. After his arrest,

3

Mills was immediately taken to the emergency room to receive medical treatment for fractures to the orbital area, sinus cavity, and nose along with other medical complications. The attending physician reported that Mills was "uncommunicative and somewhat groggy with diminished mental status," and she was "unable to open the eye to assess the pupil or the orbit" due to a "large preorbital hematoma around the left eye." He was admitted to the hospital, where he was treated in intensive care for two days. Ultimately, Mills was charged with possession of cocaine and resisting arrest without violence, and he was found guilty on the drug charge and acquitted of the resisting arrest charge.

At the outset, it is undisputed that Deputy Kent was acting within his discretionary authority when he arrested Mills, and thus the burden shifts to Mills to show that qualified immunity does not apply. Resolving all issues of material fact in Mills's favor, the district court found the following: (1) the crime at issue involved possession of a handgun by a convicted felon, and Mills "willingly turned [the handgun] over to Holliday" prior to the date of his arrest; (2) Mills did not hear the officers' commands to show his hands because he was asleep due to an overdose of Xanax; (3) Mills was not passively resisting arrest; (4) Mills sat up in bed upon awakening while McCarty held his left arm; (5) Deputy Kent hit Mills multiple times; and (6) Mills did not pull away or display any hostile movements.

4

Viewing the evidence in the light most favorable to Mills, the district court determined that (1) the crime at issue was not severe considering that Mills was charged with possession of a firearm as a convicted felon, but he previously had given the firearm to Agent Holliday; (2) Mills did not pose an immediate safety threat because his prior convictions involved drug and property crimes, Agent McCarty recognized that Mills did not have a violent past, and he was physically nonresponsive to the officers' shouted verbal commands due to an overdose of Xanax; (3) Mills did not try to evade arrest because he was incapable of resisting arrest considering the medical records of his semi-conscious and lethargic state due to the drug overdose; (4) Deputy Kent did not need to punch Mills in the face in order to control the situation because Agent McCarty already had secured Mills's arm and had put away his weapon once he saw that Mills was asleep; (5) the amount of force used was excessive, especially considering Mills's torpid physical condition; (6) Mills suffered multiple fractures to his facial bones due to Deputy Kent's force, was hospitalized and, contrary to Deputy Kent's assertions, Mills's attending physician recommended a follow-up appointment and a consultation for maxillofacial surgery; and (7) in light of Agent Holliday's frustration that Mills did not assist in his investigation and Deputy Kent's apparent intent to beat Mills again even after Mills was at the police station, Deputy Kent likely did not act in good

5

faith when he punched Mills.

We find no error in the district court's determinations. As we have held, gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force. *See Reese v. Herbert*, 527 F.3d 1253, 1273-74, (11th Cir. 2008); *Hadley v. Gutierrez*, 526 F.3d 1324, 1334, (11th Cir. 2008); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000). Moreover, this Court's precedent gave clear notice to a reasonable officer that excessive force used without justification was unconstitutional. *Pearson*, __ U.S. __ , 129 S.Ct. at 815-16, 818; *Vinyard*, 311 F.3d at 1346; *Slicker*, 215 F.3d at 1232-33. This Court has held that where a plaintiff alleges that the defendants used excessive force maliciously and sadistically to cause harm, the defense of qualified immunity is unavailable because the right to be free from gratuitous force after a suspect has been subdued is a clearly established constitutional right. *See Slicker*, 215 F.3d at 1232-33. Accordingly, Mills is entitled to a trial on his § 1983 claim against Deputy Kent and the district court is instructed to appoint counsel to represent Mills in further proceedings.

**AFFIRMED.**