[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 19-14447 & 19-14452
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cv-00017-JES-MRM

ROBERT DALE HARRIS,

Plaintiff - Appellee,

versus

KASEY P. WINGO, individually,
MICHAEL D. CHAPMAN, individually,

Defendants - Appellants.

_____

Appeals from the United States District
Court for the Middle District of Florida

_____

(April 19, 2021)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

This case arises out of the arrest of plaintiff Robert Harris by Deputies Michael Chapman and Kasey Wingo of the Collier County Sheriff's Office.[1] Chapman and Wingo stopped Harris as he was leaving a storage facility one evening. After a brief conversation, during which Harris provided his name and explained that he was working at the facility, the deputies arrested him for loitering and prowling in violation of Fla. Stat. § 856.021 and resisting an officer without violence in violation of Fla. Stat. § 843.02. Harris brought claims under 42 U.S.C § 1983 against Chapman and Wingo for constitutional violations including false arrest, malicious prosecution, and First Amendment retaliation. Both deputies moved for summary judgment, and the district court denied their motions as to these three claims. The deputies now appeal the denial of summary judgment.[2] Viewing the facts in the light most favorable to Harris, we hold that his arrest violated his clearly established constitutional rights; thus, we affirm.

## I. BACKGROUND

Harris's lawsuit stems from several interactions with deputies of the Collier County Sheriff's Office. Only one is relevant to this appeal: Harris's stop and subsequent arrest by Wingo and Chapman on the night of April 4, 2014.

---

[1] Chapman's and Wingo's appeals were briefed separately but are consolidated for the purposes of this opinion.

[2] The district court also denied summary judgment on an assault and battery claim, but the deputies have not appealed that denial.

2

The undisputed facts of the interaction are as follows.[3]  At approximately 9:30 p.m., Chapman spotted Harris, who was riding a bicycle and wearing a backpack, exiting a storage facility.  The facility had closed at 9:00 p.m.  Chapman maintains that there had been several storage unit burglaries in the area, so he stopped Harris to investigate.  During their entire conversation, Harris stood straddling his bicycle with his feet on the ground.

Except for the very beginning of their interaction, the audio of Harris and Chapman's conversation was recorded on Chapman's dash cam, although none of it occurred within the video frame.  When the audio recording begins, we hear Chapman ask Harris, "Robert, here's the thing, do you work in here?"  Doc. 101-2.[4]  Harris then explains that he is working for someone named Randy, who is still in the storage facility.  Chapman tells Harris that he is being abrasive, and Harris asks to speak to Chapman's supervisor.  Chapman responds that Harris "do[es] [not] have a right" to do so.  *Id.*

---

[3] On review of a motion for summary judgment, we view the facts in the light most favorable to the plaintiff.  *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).  In recounting the facts, we note where facts are disputed and at this stage resolve the disputes in Harris's favor.  We emphasize, however, "that the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case."  *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (internal quotation marks omitted).  Because we write for the parties, who are familiar with the facts, we include only what is necessary to explain our decision.

[4] "Doc." numbers refer to the district court's docket entries.

At this point we hear Deputy Wingo on the recording for the first time. He asks if Chapman has gotten Harris's identification. Chapman responds that he thinks Harris's name is "Robert . . . Price, I think is his last name . . . Robert something." *Id.* Harris immediately interjects, "No it's not." *Id.* Wingo asks for Harris's ID, and Harris responds that he does not have one. Chapman then asks Harris who he is working with, and Harris uses his cell phone on speakerphone to call Randy to ask that he "come out to the gate and talk to these officers." *Id.* Randy responds that he is "on [his] way." *Id.*

When Harris hangs up the phone, Wingo asks, "What's your last name, Robert?" *Id.* Harris responds, "of the family Harris, and I do not consent . . ." *Id.* Wingo interrupts Harris and asks, "Harris? H-A-R-R-I-S?" *Id.* Harris begins to respond, but Chapman interrupts and cuts him off mid-sentence. The conversation continues for another 41 seconds, during which Wingo asks again for Harris's name. Throughout, both deputies cut Harris off as he speaks to them. During the 41 seconds, Wingo declares that he is "trying to get [Harris's] name and date of birth," but neither officer ever asks Harris for his birth date. *Id.* After additional back and forth, Chapman tells Harris to step off his bike. We hear scuffling and Harris screaming in pain.

Harris was arrested and charged with three counts of battery on a police officer, one count of assault on a police officer, one count of resisting an officer

without violence, and one count of loitering and prowling. The state's attorney later dropped all charges.

Harris filed a § 1983 action against Wingo and Chapman, among other defendants. In this appeal, we are concerned with three of Harris's claims: false arrest, malicious prosecution, and First Amendment retaliation based on the April 4, 2014 incident. In the district court, Wingo and Chapman moved for summary judgment on these claims, arguing that they had probable cause to arrest Harris. Chapman argued that he had probable cause to arrest Harris for loitering and prowling and resisting arrest without violence. Wingo maintained that he had probable cause to arrest Harris for resisting an officer without violence. Both deputies argued in the alternative that, even if they lacked probable cause, they had arguable probable cause to arrest Harris and therefore were entitled to qualified immunity for the three claims. The district court determined that neither deputy had probable cause or arguable probable cause to arrest Harris and denied summary judgment on all three claims.

This appeal followed.

## II.    STANDARD OF REVIEW

We review the district court's denial of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmovant, here, Harris. *Hadley v. Gutierrez*, 526 F.3d 1324, 1328 (11th Cir. 2008). A government official asserting

5

a qualified immunity defense bears the initial burden of showing "he was acting within his discretionary authority." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). It is undisputed that Wingo and Chapman were acting within their discretionary authority when they arrested Harris. Thus, the burden shifts to Harris to show that, taking the facts in the light most favorable to him, (1) Wingo and Chapman violated his constitutional right, and (2) this right was clearly established at the time of the alleged violations. *Hadley*, 526 F.3d at 1329.

## III. DISCUSSION

On appeal, Chapman and Wingo argue that they are entitled to qualified immunity on the false arrest, malicious prosecution, and First Amendment retaliation claims because they had arguable probable cause to arrest Harris,[5] so there was no Fourth Amendment violation, and the district court erred in denying them summary judgment. We disagree.

An officer who "make[s] an arrest without probable cause [is] entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the

---

[5] Chapman also argues on appeal that the undisputed facts demonstrate he had probable cause to arrest Harris. Because we conclude that neither deputy had arguable probable cause, Chapman's argument that he had actual probable cause necessarily fails. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1258 (11th Cir. 2010).

same knowledge as the Defendant[] could have believed that probable cause existed to arrest." *Lee*, 284 F.3d at 1195 (internal quotation marks omitted). The arguable probable cause standard "is an objective one and does not include an inquiry [into] the officer's subjective intent or beliefs." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). Whether an officer possessed arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Id.* We begin by examining whether the deputies had arguable probable cause to arrest Harris for loitering and then proceed to resisting an officer without violence.

### A. Loitering and Prowling

The offense of loitering and prowling under Florida law "has two elements: (1) the accused must be loitering or prowling at a place, at a time, or in a manner not usual for law-abiding citizens; and (2) the loitering or prowling must be under circumstances that warrant a reasonable fear for the safety of persons or property in the vicinity." *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000). "Even when an individual's conduct justifies an officer's alarm, the concern for an imminent breach of the peace may diminish because the loitering and prowling statute requires the officer to provide the person with the opportunity to dispel any alarm created by those circumstances." *D.S.D. v. State*, 997 So. 2d 1191, 1193 (Fla. Dist. Ct. App. 2008).

7

Chapman maintains that Harris's presence at the facility after closing time, especially while riding a bicycle and wearing a backpack, was sufficient to justify concern for the safety of persons or property in the area. Chapman also argues that Harris was given the opportunity to dispel alarm about his presence at the storage facility but did not do so and refused to give the deputies his first and last name when asked. According to Chapman, a reasonable officer possessing this knowledge would have believed he had probable cause to arrest Harris.

Although we question whether Harris's presence at the facility was sufficient to warrant a reasonable fear for persons or property, we need not reach that issue to determine that Chapman and Wingo lacked arguable probable cause to arrest Harris for loitering and prowling. Regardless of whether Harris's actions were suspicious, he was denied the opportunity to dispel alarm, as required by Florida law. *D.S.D.*, 997 So. 2d at 1193. Before his arrest, Harris explained why he was at the facility and called the man with whom he was working, Randy, on speakerphone so that the deputies could hear. He asked Randy to come speak with the deputies, and Randy said he was "on his way." Yet, Chapman and Wingo did not wait to verify Harris's explanation. Instead, before Randy arrived—less than a minute after the phone call—they arrested Harris. By refusing to wait and see whether Randy came out of the facility and could verify Harris's explanation for

why he was at the facility after closing time, Chapman and Wingo denied Harris the opportunity to dispel alarm.

The argument that Harris refused to identify himself is equally unavailing. During the interaction, Harris confirmed that his first name was Robert, corrected Chapman when he said Harris's last name was Price, and told the deputies that his last name was Harris. Chapman argues that Harris's phrasing of his answer, "of the family Harris," to supply his last name amounted to insufficient identification, but we disagree. A reasonable officer under the circumstances would not have assumed Harris was refusing to provide his name. And if confused by the answer, the officer could simply have asked Harris to clarify. Indeed, Wingo had no trouble understanding Harris's response, "of the family Harris," as supplying his last name because Wingo immediately asked Harris to confirm the spelling.[6]

A reasonable officer in the same position as Chapman and Wingo would not have believed that probable cause existed to arrest Harris for loitering and prowling. Harris gave his name when asked. He explained his presence at the storage facility by saying he was working there and on his own initiative sought to prove it, but the deputies arrested him before he could provide proof, even though

---

[6] On appeal, Chapman argues that the district court erred in assuming Harris had given his name before the dash cam audio began recording because Chapman testified in his deposition that he knew Harris's name from a previous encounter. The district court relied on the dash cam recording, in which Chapman states he did not know Harris before he pulled him over. This dispute is of no moment for our purposes because Harris provided his name to the deputies during the recorded part of their conversation.

9

they knew that proof was on its way in a matter of minutes. Florida law was clear on April 4, 2014 that an officer must give a suspect the opportunity to "dispel any alarm created by th[e] circumstances" before arresting him for loitering and prowling. *D.S.D.*, 997 So. 2d at 1193; *see also Kingsland*, 382 F.3d at 1229 (concluding that police cannot ignore readily available information that would exonerate an arrestee). The deputies thus lacked arguable probable cause to arrest Harris for loitering and prowling.

## B. Resisting an Officer Without Violence

Chapman and Harris also maintain they had arguable probable cause to arrest Harris for resisting an officer without violence. In Florida, an individual commits the offense of resisting an officer without violence when they "resist, obstruct, or oppose any [law enforcement] officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer." Fla. Stat. § 843.02. "[T]o support a conviction for obstruction without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009). Probable cause exists to arrest an individual for resisting an officer without violence when that individual disobeys a command

by a law enforcement officer. *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008).

The deputies maintain they had arguable probable cause to arrest Harris for resisting an officer without violence because he refused to identify himself. As explained above, the record does not support this assertion. The audio evidence indicates that Harris gave Wingo and Chapman his name when asked. When asked for his ID, Harris responded he did not have one. Chapman argues that Wingo asked Harris for his birth date and Harris refused to provide it. But, again, the audio proves otherwise. On the audio recording, Wingo says that he is "trying to get [Harris's] name and date of birth," but Wingo never asked for Harris's birth date. Doc. 101-2. Harris did not disobey any of the deputies' commands. An objectively reasonable officer therefore could not have believed he had probable cause to arrest Harris for resisting an officer.

Because the deputies lacked arguable probable cause to arrest Harris on either count, we easily determine that the arrest violated Harris's clearly established Fourth Amendment rights. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007) ("[A]n arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."). The deputies are not entitled to qualified immunity for the arrests, nor are they entitled to summary judgment on these claims.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the denial of summary judgment as to Harris's claims of false arrest, malicious prosecution, and First Amendment retaliation.

**AFFIRMED**.