[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-13529

Non-Argument Calendar

————————————————

ADAM SINDELL,

Plaintiff-Appellant,

*versus*

LATONYA COACH,
in their individual and official capacities as
Deputies of the Houston County Sheriff's Office,
JACOB CLECKNER,
in their individual and official capacities as
Deputies of the Houston County Sheriff's Office,

Defendants-Appellees,

KYLE BOERGER,

In their individual and official capacities as

Deputies of the Houston County Sheriff's Office,

                                                    Defendant.

————————————

Appeal from the United States District Court

for the Middle District of Georgia

D.C. Docket No. 5:22-cv-00365-CAR

————————————

Before ROSENBAUM, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Adam Sindell appeals the district court's grant of summary judgment to Defendants-Appellees Latonya Coach and Jacob Cleckner, two deputies with the Houston County Jail, based on qualified immunity. Sindell argues that the deputies are not entitled to qualified immunity because clearly established law put Cleckner on notice that he used excessive force to restrain Sindell. Sindell also argues that the district court erred in granting qualified immunity on his First Amendment retaliation claim. After careful review, we affirm the district court's grant of qualified immunity.

## I.

In June 2020, Sindell was a pretrial detainee in the Houston County Jail.[1] He resided in the L-Pod section of the jail, which housed roughly eighty pretrial detainees. Jail officials checked detainees' cells three times per day for contraband and rule violations. On June 25, Sindell filed a grievance against Deputy Coach, a supervising officer in the L-Pod. He alleged that during her routine check of his cell, Coach pulled his mattress out from under him, causing him to injure his elbow, and threw away his Bible because he possessed more books in his cell than the rules allowed. The Houston County Sheriff's Office reviewed the incident and found Sindell's allegations against Coach to be "unsustained" and unfounded, including that it was "disproven that [Deputy] Coach threw [Sindell's] Bible into the trash."

On June 30, Coach again conducted her routine checks of the L-Pod. During one check, Coach told the other L-Pod detainees, while pointing to Sindell, that no one could trade food and they would have to eat in their cells because people were filing grievances against her. According to Sindell, she told the others, "You don't get to come out of your cell because this guy wants to write grievances . . . ." When she checked Sindell's cell that day, she again found that he possessed more books than he was allowed and

---

[1] Because we are reviewing the district court's decision on summary judgment, we "view all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party," here, Sindell. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1277 (11th Cir. 2001).

put him on "lockdown," meaning that he was not allowed out of his cell with the other detainees during "rec time."

During rec time that day, Coach worked at the security desk in the common area. In addition to the security desk, the common area had a computer kiosk where detainees could send emails and file grievances. Detainees on lockdown could buzz the security desk and speak with Coach. Sindell used the buzzer to request toilet paper. Coach retrieved toilet paper and gave it to another detainee to take to Sindell in his cell. When the other detainee reached the cell, Coach unlocked the cell door. Sindell took the opportunity to leave his cell for the kiosk in the common area to send a message to his fiancée, even though he knew he was on "lockdown."

Coach saw Sindell in the common area, told him that he was on lockdown, and instructed him "a couple of times" to return to his cell. Sindell did not do as instructed. Because he did not obey, Coach ordered all of the detainees out of their cells on "rec time" to return to their cells so that, if Sindell remained out of his cell, he would be immediately identifiable. All of the other detainees returned to their cells. Sindell remained at the kiosk. Coach called for other officers to assist with Sindell.

Deputies Cleckner and Boerger responded to Coach's call. Cleckner told Sindell twice, in quick succession, to lock down. Sindell testified that Coach told them that Sindell "needs his ass kicked." Sindell began walking away from the kiosk and toward Cleckner and Boerger with his palms open by his sides. Cleckner

and Boerger walked toward Sindell while Coach remained behind them near the security desk. Cleckner pointed toward Sindell's cell, and one second later, wrapped Sindell's legs with his arms and took him to the ground. Boerger put his arm around Sindell's upper back in an apparent attempt to control his fall, but Sindell's head hit the floor. Cleckner and Boerger began to turn Sindell onto his stomach, and he went limp. They handcuffed him and lifted him up, and he remained limp. They placed him in a chair, and Sindell began having what appeared to be seizures. Cleckner and Boerger took Sindell to the medical unit in a wheelchair. Sindell suffered bruising and cuts and stated that he also suffered from an injured wrist, seizures, and a low-grade fever. Sindell testified that he continues to suffer pain that impacts his ability to work.

Sindell sued Deputies Cleckner, Coach, and Boerger under 42 U.S.C. § 1983 for excessive force, failure to intervene, and retaliation for exercising his First Amendment rights. With consent by all parties, Boerger was dismissed from the suit. Cleckner and Coach moved for summary judgment, and the district court granted their motion, finding they were entitled to qualified immunity. Sindell timely appealed.

## II.

We review de novo a district court's decision on summary judgment. *Teel v. Lozada*, 99 F.4th 1273, 1280 (11th Cir. 2024). Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view the facts in the light

most favorable to the non-moving party." *Crocker v. Beatty*, 995 F.3d 1232, 1239 n.5 (11th Cir. 2021) (internal quotation marks omitted).

## III.

Sindell contends that the district court erred in granting summary judgment to Deputies Cleckner and Coach on his claims of excessive force and failure to intervene under the Fourteenth Amendment and retaliation under the First Amendment. We begin with an overview of qualified immunity and then address each claim in turn.

An officer claiming the protection of qualified immunity "must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Once established, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id.* at 1137. To do so requires two parts. *Id.* The plaintiff must show both that the officer "violated a constitutional right" and "that constitutional right was clearly established at the time." *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022). "We may decide these issues in either order." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019). If we find the right allegedly violated was not clearly established, we need not decide if the officials committed a constitutional violation. *See Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).

The law may clearly establish a constitutional right in three ways: (1) "case law with indistinguishable facts"; (2) "a broad statement of principle within the Constitution, statute, or case law"; or (3) "conduct so egregious that a constitutional right was clearly

violated, even in the total absence of case law." *United States v. Hill*, 99 F.4th 1289, 1301 (11th Cir. 2024) (quotation marks omitted). The Supreme Court has cautioned us "not to define clearly established law at a high level of generality." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). Although a plaintiff does not need to identify "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The critical question of the clearly-established test "asks whether already existing law was so clear that, given the specific facts . . . every reasonable official would have understood that what he is doing violates the Constitutional right at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018) (internal quotation marks omitted). And where the plaintiff relies on a broad principle, "it must be obvious that the general rule applies to the specific situation in question." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam).

## A. Excessive Force

First, regarding his claim of excessive force, Sindell concedes that "there is no specific case law" addressing the circumstances here. Instead, he asserts that, under the broad statement of principle against the use of objectively unreasonable force on pretrial detainees, Deputy Cleckner's takedown violated his clearly established right to be free from excessive force. In support, Sindell relies primarily on *Kingsley v. Hendrickson*,[2] which clarified that an officer

---

[2] Sindell also relies on *Coley v. Lucas County*, 799 F.3d 530 (6th Cir. 2015). Even if *Coley* were not distinguishable, "out-of-circuit authority is irrelevant in

violates a pretrial detainee's constitutional rights when "the force purposely or knowingly used against him was objectively unreasonable." 576 U.S. 389, 396–97 (2015). But nothing in *Kingsley*'s "application in our precedent" would put "the unconstitutionality of [Cleckner's] conduct 'beyond debate.'" *Hill*, 99 F.4th at 1302 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Although the law is clearly established that "the use of force on compliant, nonresistant detainees is excessive," *id.* at 1301, Sindell was actively disobeying orders to "lockdown" leading up to Deputy Cleckner's use of force. And the law is clearly established that officers "may not use gratuitous force against a prisoner who has been already subdued." *Skrtich v. Thornton*, 280 F.3d 1295, 1303–04 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) (finding the use of force became unreasonable when it continued past the need for force), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). But Deputy Cleckner ceased using force as soon as Sindell was on the ground and handcuffed, so the force did not continue past the need for it.

Ultimately, Sindell does not identify "a broad statement of principle within the Constitution, statute, or case law" that would govern the circumstances here. *Hill*, 99 F.4th at 1301. Nor do we discern such a principle. Deputy Cleckner is therefore entitled to

---

determining whether the law was clearly established," outside of an "obvious clarity" case. *Gilmore v. Georgia Dep't of Corr.*, No. 23-10343, -- F.4th --, 2025 WL 1911728, at *2 (11th Cir. July 11, 2025) (en banc).

qualified immunity because Sindell cannot show a clearly established constitutional right. *See Ireland*, 53 F.4th at 1297. Because failing either of qualified immunity's requirements answers the question before us, we do not decide whether Cleckner's actions amounted to a use of excessive force. *See Maddox*, 727 F.3d at 1121. Accordingly, we affirm the district court's grant of summary judgment to Cleckner on Sindell's claim under § 1983 of excessive force.

### B. Failure to Intervene

Next, Sindell challenges the district court's grant of qualified immunity to Deputy Coach on his claim that she failed to intervene to stop Cleckner from using excessive force. An officer present at the scene can be liable for failing to "take reasonable steps to protect the victim of another officer's use of excessive force," even if the officer herself did not use excessive force. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). But the non-intervening officer must have been "in a position to intervene yet failed to do so." *Id.* at 1331. Where the use of force "happened quickly and was over quickly," an officer usually does not have the opportunity to intervene. *Jackson v. City of Atlanta*, 97 F.4th 1343, 1362–63 (11th Cir. 2024).

The record here confirms that Deputy Coach was not "in a position to intervene," even if Deputy Cleckner used excessive force. *Hadley*, 526 F.3d at 1331. Only seconds passed in the time it took for Officer Cleckner to come near Sindell, wrap Sindell's legs with his arms, and take Sindell to the ground. Once Sindell was on the ground, he lost consciousness, and Cleckner stopping using

force. From her position by the security desk, Coach did not have the time or position to intervene because of how "quickly" the events transpired. *See Jackson*, 97 F.4th at 1362–63. Thus, Sindell cannot show that Coach violated his constitutional rights by failing to intervene in an excessive use of force. We affirm the district court's grant of qualified immunity to Coach on Sindell's failure to intervene claim.

## C. Retaliation

Finally, Sindell asserts that the district court erred in granting qualified immunity to Coach and Cleckner on his First Amendment retaliation claim. On appeal, Sindell argues that Coach retaliated against him for a grievance he filed against her for throwing his Bible in the trash by (1) putting him on lockdown, (2) ignoring him on the intercom, (3) telling the other people in Sindell's dormitory that they would not be able to pass food trays and would have to eat in their cells because Sindell filed a grievance against her, and (4) failing to intervene in response to Cleckner's use of force.[3]

The district court did not consider the first three alleged bases for retaliation because Sindell raised them for the first time only in reply to the officers' motion for summary judgment. It is

---

[3] Before the district court, Sindell also argued that Cleckner's use of force and Coach's failure to intervene were in retaliation for communicating with his fiancée by email. But Sindell does not raise this argument on appeal. Thus, we consider this claim abandoned and decline to address it. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

improper for a plaintiff to raise new claims through briefs opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). We therefore decline to address those three arguments for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

To make out a claim for retaliation under the First Amendment, a plaintiff must show that "(1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). A person in detention "is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). Thus, we consider Sindell's June 25, 2020, grievance to be constitutionally protected speech. *See id.*

According to Sindell, Coach took adverse action against him by failing to intervene in Cleckner's use of force because of the grievance he filed against her. We agree that a reasonable jury could find that Coach's actions were motivated, at least in part, by Sindell's grievance. Sindell testified that Coach told the other detainees, while pointing to Sindell, that they would not be able to trade food and would have to eat in their cells because of grievances filed against her. Sindell also testified that she told Cleckner and Boerger when they arrived in the L-Pod that Sindell "needs his ass kicked." These facts, viewed in the light most favorable to

Sindell, indicate that the grievance motivated Coach's actions toward Sindell and would support a reasonable jury in finding as much.

But even where protected speech motivates retaliatory actions, qualified immunity still protects defendants where "the record indisputably establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations." *Stanley v. City of Dalton*, 219 F.3d 1280, 1296 (11th Cir. 2000). Here, Sindell used a ruse to exit his cell in direct violation of Coach's lockdown order and disobeyed her direct orders to return. Coach was therefore motivated, at least in part, by the lawful consideration to have Sindell return to his cell, so she is entitled to qualified immunity. *See id.*

Sindell also argues that the grievance against Coach motivated Cleckner's use of force against him in violation of his First Amendment rights. Sindell's claim of retaliation against Deputy Cleckner fails, however, because he cannot show a causal connection between the grievance and Cleckner's takedown. To determine a causal connection, we ask "whether the defendants were subjectively motivated to discipline because [the detained person] complained of some of the conditions of his confinement." *Smith*, 532 F.3d at 1278. But Sindell does not point us to anything in the record, nor do we identify anything, indicating that Cleckner knew that Sindell filed a grievance against Coach. Instead, the district court found, and we agree, that Cleckner simply responded to Coach's call for assistance and acted in response to that call. Without a causal connection, Sindell cannot establish that Cleckner

retaliated against him for exercising his First Amendment right of freedom of speech. *See Bailey*, 843 F.3d at 480.

## IV.

Therefore, we affirm the district court's grant of summary judgment to the Appellees based on qualified immunity.

**AFFIRMED.**